570 A.2d 1328

**COMMONWEALTH of Pennsylvania**

v.

**Chester C. PARSONS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 28, 1989.

Filed March 7, 1990.

274

Lawrence R. Dworkin, Chester, for appellant.

Joseph A. Mittleman, Asst. Dist. Atty., Media, for Com., appellee.

Before CAVANAUGH, BROSKY and BECK, JJ.

BECK, Judge.

After a bench trial, appellant Chester Clayton Parsons was convicted of possession of drug paraphernalia,[1] possession of a controlled substance[2] and possession of a con-

1. 35 P.S. § 780–113(a)(32) (Purdon Supp.1989).
2. 35 P.S. § 780–113(a)(16) (Purdon Supp.1989).

trolled substance with intent to deliver.[3]  He was sentenced to six to twelve months for possession of drug paraphernalia and fifteen to thirty months for possession of a controlled substance and possession of a controlled substance with intent to deliver;[4] these sentences to run concurrently. Appellant appeals these convictions.

Appellant first contends that evidence seized by the police pursuant to a valid search warrant should have been suppressed based upon the police having violated the "knock and announce" rule by entering his house before a reasonable period of time had elapsed and absent exigent circumstances.  Appellant also contends that the record contains insufficient evidence to establish that he possessed cocaine with intent to deliver.  We find both of these contentions to be meritless.

At approximately 9:00 p.m., Detective Lawrence Hughes, along with other police officers, executed a search warrant at 889 Concord Road in Delaware County.  Detective Hughes, accompanied by the other officers, knocked on the door of the residence and announced "Police Officers. I have a search warrant."  Suppression Transcript, at 12. After approximately a forty-five second delay, during which time movement from inside the house was heard, Detective Hughes again announced "Police.  Search Warrant."  *Id.* After more movement was heard emanating from inside the apartment and still no one opened the door, the police opened the door with a sledge hammer and entered the house.

Once inside the house, the police saw appellant who was not dressed, but had a bedspread or sheet wrapped around himself.  Also in the house were appellant's girlfriend, Kelli L. Johnson, and their daughter.  The items seized by the police included an electronic scale, a box of plastic bags, ziplock bags, a quarter pound bag of marijuana, other

3.  35 P.S. § 780–113(a)(30) (Purdon Supp.1989).
4.  The trial court concluded that possession of a controlled substance merged with possession of a controlled substance with intent to deliver.

quantities of marijuana in a jar and on a dish, a box containing 7.2 grams of cocaine, packaging materials and notebooks with tally sheets. In addition, appellant consented to a police search of his Ford truck, which was parked at the rear entrance of the home. In the glove compartment of the car the police found approximately $1,500.00 in cash. Detective Hughes testified that the items seized from the home and the car were consistent with the sale and distribution of controlled substances, rather than with the mere possession of controlled substances. *Id.* at 14.

Appellant first contends that the items seized from 889 Concord Road should have been suppressed due to the police' violation of the "knock and announce" rule. Appellant argues that the police failed to await a response from within the house for "a reasonable period of time." In addition, appellant claims that the movement the police heard from inside the apartment did not create exigent circumstances warranting a forced entry. Absent the wait of a reasonable period of time or exigent circumstances, appellant contends, the forced entry violated Rule 2007 of the Rules of Criminal Procedure. Appellant claims, therefore, that the items seized as a result of that entry must be suppressed.[5]

The trial judge concluded that the movement the police heard emanating from within the house provided the police with reasonable grounds for believing that evidence was being destroyed. Trial court op. at 2. The judge concluded that exigent circumstances existed which justified forced entry. *Id.*

Although the trial court did not consider whether the police waited a reasonable length of time after announcing their "identity, authority and purpose", we are free to affirm the trial court for any reason. *Commonwealth v. Chambers*, 385 Pa.Super. 605, 610–12, 561 A.2d 1257, 1260

---

5. Initially we note that due to our ultimate conclusion that the police did wait a reasonable length of time prior to entering the house, we need not address appellant's contention that no exigent circumstances existed to justify the police' forced entry.

(1989), *appeal granted,* 523 Pa. 647, 567 A.2d 650 (1989). Our review of the record reveals that the police satisfied the requirements of Rule 2007 by waiting "a reasonable period of time after" announcing their "identity, authority and purpose".

In reviewing an appeal from a suppression ruling:

we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Whitney,* 511 Pa. 232, 239–40, 512 A.2d 1152, 1156 (1986), quoting *Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985). *See also Commonwealth v. Morgan,* 517 Pa. 93, 534 A.2d 1054 (1987); *Commonwealth v. Markovitch,* 388 Pa.Super. 244, 565 A.2d 468 (1989).

At the suppression hearing, Detective Hughes testifed that after knocking on the door and identifying that he was a police officer with a search warrant, he waited at least forty-five seconds. During that time, while no one answered the door, Detective Hughes testified that he heard movement, which sounded like footsteps, emanating from the house. Detective Hughes testified that he again knocked on the door and stated that he was a police officer and that he had a search warrant. After hearing more movement from inside the house but receiving no response from inside the home, the police forced the door open and entered the dwelling. We are now asked to consider whether the actions of the police violated the "knock and announce" rule. We conclude that the police officers' actions did not violate the "knock and announce" rule and affirm the trial court's ruling admitting the evidence seized as a result of the search of the dwelling.

Rule 2007 of the Rules of Criminal Procedure constitutes a codification of the "announcement" rule which the Fourth Amendment to the United States Constitution requires. *Commonwealth v. Golden*, 277 Pa.Super. 180, 183–85, 419 A.2d 721, 723 (1980). This rule provides:

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. Rule 2007.

At the suppression hearing, the Commonwealth possesses the burden of establishing by a preponderance of the evidence that the search or seizure of the evidence satisfied the mandates of Rule 2007 and, therefore, that the evidence sought to be admitted is admissible. *Chambers*, 385 Pa.Super. at 606–08, 561 A.2d at 1258. Initially, we note that whether the Commonwealth met this burden requires a fact-specific approach. We commence our analysis with a discussion of the underlying purposes of Rule 2007.

"The purpose[s] of the 'knock and announce' rule," as articulated by this court in *Commonwealth v. Morgan, Supra* "[are] to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against unauthorized entry of persons unknown to him or her, and to prevent property damage resulting from forced entry." *Morgan*, 517 Pa. at 97, 534 A.2d at 1056. It has also been stated that even where the police announce both their identity and purpose, as was the case in the

instant appeal, forcible entry remains impermissible if the occupants of the premises sought to be entered have not been provided with the opportunity to relinquish the premises voluntarily. *Commonwealth v. DeMichel*, 442 Pa. 553, 561, 277 A.2d 159, 163 (1971), citing *United States ex rel. Manduchi v. Tracy*, 350 F.2d 658, 662 (3d Cir.1965), *cert. denied sub nom. Manduchi v. Tracy*, 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965). The critical inquiry then, is whether sufficient time elapsed for the police to form a reasonable belief that the occupants of the premises did not intend to surrender the premises peaceably or voluntarily. *DeMichel*, 442 Pa. at 560–62, 277 A.2d at 163.

We conclude that the record contained sufficient evidence for the trial judge to have concluded that at the suppression hearing the Commonwealth established by a preponderance of the evidence that the police reasonably believed that the occupants of the premises did not intend to surrender the premises voluntarily, thus warranting the forced entry effectuated by the police. We base this conclusion upon the police having articulated their identity, authority and purpose twice, the more than forty-five seconds which had elapsed from when the police first knocked on the door to when they forcibly entered the dwelling, and the movement the police heard emanating from inside the apartment[6].

In examining a claim that Rule 2007 has been violated, the first step is to consider whether the law enforcement officers provided notice to the occupants of the premises to be searched.[7] At the suppression hearing, Detective Hughes testified that he twice knocked on the door and announced that it was the police and that they had a search warrant. Suppression Transcript at 6. This evidence satisfied the notice requirement contained in Rule 2007(a).

**6.** This may have indicated to the police that the apartment was occupied and that someone was close enough to the door to have heard their knocking and their announcements of identity, authority and purpose.

**7.** If exigent circumstance exist, however, this notice requirement need not be met. There is no evidence that exigent circumstances existed when the police first arrived at the home.

Next, the police must "await a response for a reasonable period of time after" they have announced their identity, authority and purpose. Pa.R.Crim.P. Rule 2007(b). If the police are not admitted after such reasonable period of time has elapsed, they are permitted to forcibly enter the premises. *Id.* at 2007(c). The issue is whether, based upon an objective standard as to the reasonable belief of the police, the police waited a reasonable period of time before forcibly entering the premises.

In *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982), the Pennsylvania Supreme Court considered whether the police satisfied the mandates of Rule 2007 by knocking and announcing that they were police and waiting thirty to sixty seconds before forcibly entering the premises. The court held that although the police failed to announce their authority and purpose, the failure of the occupants of the premises to respond during the thirty to sixty second delay provided the police with sufficient grounds to conclude that the occupants did not intend to surrender the premises peacefully. *Id.*, 498 Pa. at 333–35, 446 A.2d at 587. In *Stanley*, the court concluded that absent grounds to suggest that the premises would be peacefully surrendered, the police were not required to communicate their purpose. *Id.* at 333–35, 446 A.2d at 587.

Also, in *Commonwealth v. Burstin*, 259 Pa.Super. 584, 393 A.2d 979 (1978), this court addressed whether the police' knocking and announcing their identity, authority and purpose, and waiting twenty seconds, during which time they heard a television and telephone conversations, before forcibly entering an apartment, constituted a reasonable time as required by Rule 2007. The *Burstin* court concluded that because the police heard voices within close proximity to the door where they had knocked, this provided the occupants with enough time to have answered the door during the twenty seconds which had elapsed. *Id.*, 259 Pa.Superior Ct. at 586–88, 393 A.2d at 981. The court concluded that the twenty second delay was "reasonably long enough" to

provide the occupants with an opportunity to surrender the premises voluntarily. *Id.*, 259 Pa.Superior Ct. at 586–88, 393 A.2d at 981.

The case sub judice is analogous to both *Stanley* and *Burstin.* In *Stanley* and *Burstin*, the respective courts concluded that the police provided the occupants of the premises with a sufficient opportunity to surrender the premises peacefully and voluntarily. Each court considered whether, based upon the elapsed time and the factual circumstances of each case, the police could have concluded that the occupants did not intend to relinquish the premises voluntarily.[8] In the instant case, we conclude that the two announcements of identity, authority and purpose, coupled with the sounds of a person moving about which were heard emanating from the premises and the more than forty-five seconds which elapsed from the police' first knock on the door until the police forcibly entered the home, furnished the police with reasonable grounds to conclude that the occupants did not intend to permit entry voluntarily.[9]

**8.** *Cf. DeMichel*, 442 Pa. at 562–64, 277 A.2d at 164 (five to fifteen second delay after announcing their presence and purpose, despite occupant's close proximity to door, did not constitute reasonably sufficient period of time); *Commonwealth v. Clemson*, 234 Pa.Super. 191, 194–97, 338 A.2d 649, 651–52 (1975) (ten second delay after police announced identity and purpose constituted insufficient opportunity for occupants to surrender premises voluntarily); *Commonwealth v. Mazzella*, 231 Pa.Super. 247, 251, 331 A.2d 784, 786 (1974) (five to ten second delay after adequate notice provided was unreasonable and did not provide justification for forced entry).

**9.** The instant appeal is not controlled by *United States ex rel. Ametrane v. Gable*, 276 F.Supp. 555 (E.D.Pa.1967), *aff'd*, 401 F.2d 765 (3d Cir.1968). In *Ametrane*, the United States District Court for the Eastern District of Pennsylvania considered whether knocking on the door of an apartment, followed by a thirty to sixty second delay during which no sounds emanated from the premises sought to be searched, which occurred after police thought the defendant observed the officers approaching his door, justified both the officers' belief that the defendant was in the process of destroying evidence and their forced entry into his dwelling. *Id.* at 558–59. The court concluded that the circumstances of the case did not warrant the police entering the premises based upon exigent circumstances. *Id.* at 559. In dicta the court noted that "[e]ven if [the defendant] had known the officers to be policemen, he might have had countless legitimate reasons for taking a minute to answer the door." *Id.* Appellant suggests that this language controls the instant appeal. Initially, we note that a federal court's interpretation of state law is not binding on this court. *Commonwealth v. Lacey*, 344 Pa.Super. 576, 582–84, 496 A.2d 1256, 1260

282

■ Appellant, however, would have this court engage in a subjective analysis of what the occupants of the particular premises knew and whether they thought the police provided them with sufficient time to relinquish the premises voluntarily. In his brief, appellant suggests that the Commonwealth failed to introduce evidence "to indicate that Mr. Parsons or his girlfriend knew that the police were there. No one called out 'who is it' or 'wait a minute' and no voices were heard indicating such knowledge." Appellant's brief, at 12. We reiterate that our focus is not upon whether appellant *actually* knew that the police were attempting to execute a search warrant of the premises. In addition, our focus is not upon what appellant was doing when the police sought admission and, whether, considering that, appellant was given sufficient time to relinquish the premises voluntarily. Rather, our inquiry is whether the record contains sufficient evidence for the trial court to have concluded that *the police reasonably believed* that the occupants did not intend to surrender the premises voluntarily. *Ker v. California,* 374 U.S. 23, 41 n. 12, 83 S.Ct. 1623, 1633–34 n. 12, 10 L.Ed.2d 726 (1963) (lawfulness of entry determined by what police officers had reason to believe at moment of entry).

We conclude that the uncontradicted evidence introduced by the Commonwealth amply supports the conclusion that based on what the police objectively knew they did not violate the mandates of Rule 2007.

■ Next, appellant contends that the record contains insufficient evidence to establish that he possessed cocaine with intent to deliver. Specifically, appellant contends that

(1985), citing *Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 2379–80, 60 L.Ed.2d 994 (1979). In addition, the facts of the case sub judice are distinguishable from *Ametrane* because in the instant case, the police both provided notice to the occupants of the dwelling and heard sounds emanating from the premises. In *Ametrane,* the police testified only to the fact of silence. Also, in *Ametrane* the police did not provide notice to the occupant of the dwelling. These factual differences adequately distinguish *Ametrane* from the case sub judice. Finally, the *Ametrane* court's statement that had the police provided notice to the defendant, their disposition of the case would have been the same, constituted dicta and, therefore, is not binding on this court.

the Commonwealth failed to introduce evidence to link the cocaine to the drug paraphernalia. We disagree.

In addressing a sufficiency of the evidence claim, our supreme court has articulated the following standard:

[W]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered.... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Santiesteban,* 381 Pa.Super. 18, 20, 552 A.2d 1072, 1074 (1988), citing *Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986), quoting *Commonwealth v. Harper,* 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979) (citations omitted). We conduct our analysis with this standard in mind.

In order to convict a defendant of possession with intent to deliver, the Commonwealth must prove the defendant both possessed the controlled substance and had an intent to deliver that substance. 35 P.S. § 780–113(a)(30) (Purdon Supp.1989). *Commonwealth v. Davis,* 331 Pa.Super. 285, 302–04, 480 A.2d 1035, 1044 (1984).

Possession of a controlled substance can be established either by showing that the defendant had the substance on his person, actual possession, or that the defendant exercised dominion over the substance, constructive possession. *Commonwealth v. Macolino,* 503 Pa. 201, 204–06, 469 A.2d 132, 134 (1983). There was no evidence that any substance was found on appellant's person and, therefore, the Commonwealth had the burden of establishing constructive pos-

session. *Commonwealth v. Miley,* 314 Pa.Super. 88, 98–99, 460 A.2d 778, 784 (1983).

"Constructive possession has been defined as the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." *Macolino,* 503 Pa. at 206, 469 A.2d at 134. *See also Commonwealth v. Mudrick,* 510 Pa. 305, 507 A.2d 1212 (1986); *Commonwealth v. Davis,* 308 Pa.Super. 431, 454 A.2d 612 (1982). Based upon the practical difficulty involved in establishing these elements when multiple actors are involved, it is now well-settled that constructive possession may be inferentially proven by the totality of the circumstances. *Macolino,* 503 Pa. at 204–06, 469 A.2d at 134. *See also Commonwealth v. Gray,* 322 Pa.Super. 37, 41–43, 469 A.2d 169, 171 (1983), *aff'd,* 509 Pa. 476, 503 A.2d 921 (1985).

In the case sub judice, appellant was present in the house when the police arrived and searched the premises. During the search, the police discovered controlled substances and drug paraphernalia in every occupied room of the house, including: an electronic scale, later discovered to possess cocaine residue; a second scale with weights; a Rite Aid envelope box containing two clear plastic bags with 7.2 grams of cocaine; assorted sizes of plastic and ziplock bags; a small ceramic jar containing marijuana and roaches [10]; marijuana on a plate; a clear plastic bag containing one quarter of a pound of marijuana; "tally sheets" with people's names and dollar amounts next to the names; and notebooks with dollar amounts and notations which, according to Detective Hughes, were consistent with drug sales.[11] In addition, police found approximately $1,500.00 cash in appellant's car.

**10.** Detective Hughes explained that a roach is a burnt marijuana cigarette with only the butt remaining. N.T. 1/10/89 at 70. "N.T." refers to the Notes of Testimony followed by a date and a page number.

**11.** Detective Hughes read a notation from a notebook, which stated: "Oz.—$100—55 for half—30 for a quarter." N.T. 1/10/89 at 31.

Kelli L. Johnson, the co-defendant, testified that her name, appellant's name and the names of several others appeared on the lease for the premises. In addition, Johnson testified that three weeks prior to the search, she had moved out of the house and that only appellant resided at the location searched. The aforementioned controlled substances and drug paraphernalia were discovered throughout the rooms of the house, including the kitchen, the living room/bedroom where appellant slept, the second floor bedroom, and in appellant's Ford truck. We conclude that viewing the evidence, and the inferences drawn from that evidence, in the light most favorable to the Commonwealth and, based upon the totality of the circumstances, there was sufficient evidence to establish that appellant exercised a "conscious dominion" over the cocaine and the rest of the drug paraphernalia found about the premises. *See Miley*, 314 Pa.Super. at 98–99, 460 A.2d at 784 (intent to control controlled substance may be established by knowledge of its presence). *See also Commonwealth v. Harris*, 263 Pa.Super. 110, 118–20, 397 A.2d 424, 429 (1979) (a defendant's presence at location where drugs are discovered is one factor to consider in establishing knowledge that contraband is present and the exercise of dominion and control).

The second element the Commonwealth must establish is that a defendant possessed the intent to deliver the controlled substance, in this case, cocaine. 35 P.S. § 780–113(a)(30) (Purdon Supp.1989). In evaluating intent, courts examine all of the facts and circumstances surrounding a person's possession of drugs and drug paraphernalia. *Davis*, 331 Pa.Super. at 304–06, 480 A.2d at 1045. As part of this analysis, courts focus upon the quantity of drugs possessed, the presence of drug paraphernalia and the presence of unusually large sums of cash. *Id.* at 304–06, 480 A.2d at 1045.

In the case sub judice, appellant possessed 7.2 grams of cocaine. Detective Hughes, qualified during the trial as an expert in the packaging and distribution of controlled sub-

stances, testified that this quantity of cocaine was consistent with an intent to deliver. N.T. 1/10/89 at 38–40. In addition, various items of drug paraphernalia were located throughout the home, many of which Detective Hughes concluded were consistent with the distribution of controlled substances.[12] Finally, the police found $1,500.00 in appellant's Ford truck. Thus, all of the factors suggested by this court in *Davis* are present.

We conclude that based upon the amount of cocaine found, the drug paraphernalia discovered throughout the house and in close proximity to the cocaine and the testimony given by Detective Hughes regarding the more than likely connection between the items found in the house and drug distribution, the record contained sufficient evidence for the trial court to conclude that the Commonwealth established each element of the offense of possession of a controlled substance with intent to deliver beyond a reasonable doubt. *See Com. v. Bruner*, 388 Pa.Super. 82, 101, 564 A.2d 1277, 1286 (1989) (possession of large quantity of controlled substance, presence of drug paraphernalia, including scales, and testimony of police officer that facts consistent with intent to deliver controlled substance, provided sufficient evidence to establish intent element); *Commonwealth v. Keefer*, 338 Pa.Super. 184, 188–90, 487 A.2d 915, 918 (1985) (defendant's possession of glassine baggies, scales, syringes and amphetamines, sufficient to establish more than personal use; evidence sufficient to establish intent to deliver); *Compare Commonwealth v. Pagan*, 315 Pa.Super. 7, 10–12, 461 A.2d 321, 323 (1983) (insufficient evidence existed to establish possession with intent to deliv-

12. Detective Hughes testified that small ziplock bags are commonly used for packaging controlled substances. N.T. 1/10/89 at 11–12, 26. Detective Hughes also explained that when tally sheets are found in close proximity to controlled substances, this is consistent with the items of record that a person involved in sales/distribution of controlled substances would keep. *Id.* at 21. Finally, Detective Hughes noted that balance scales are commonly used for weighing controlled substances. *Id.* at 29–30. *See Commonwealth v. Smagala*, 383 Pa.Super. 466, 476–78, 557 A.2d 347, 352 (1989) (tally sheets and glassine baggies consistent with controlled substance distribution).

er marijuana where police found small amount of marijuana and no drug paraphernalia).

Judgment of sentence affirmed.