## Commonwealth v. Lopez

*James J. Karl* and *Cheryl A. Ondechek, assistant district attorneys,* for the Commonwealth.
*Robert D. Bacher,* for defendant.

ECKMAN, *P.J.,* May 7, 1991—Before the court for disposition are motions in arrest of judgment and for a new trial filed by defendant, Juan Lopez.

On February 13, 1990, Special Agent Maryann Will, of the Pennsylvania Attorney General's Office,

Bureau of Narcotics and a member of the Lancaster County Drug Enforcement Task Force, charged defendant with one count each of possession with intent to deliver cocaine[1] and possession of drug paraphernalia.[2] These charges resulted from a search of defendant's residence pursuant to a search warrant issued on the same day.

Defendant filed an omnibus pretrial motion in the nature of a motion to Suppress (1) physical evidence seized pursuant to execution of the search warrant and (2) oral statements. A suppression hearing was held on August 7, 1990, after which the motion was dismissed. A non-jury trial was held on the same day and defendant was found guilty on both counts. Defendant timely filed post-trial motions. The parties having waived oral argument before the court en banc and briefs having been submitted, the motions are ready for disposition.

Defendant only contends that the court erred in failing to suppress the physical evidence seized from his residence pursuant to the search warrant executed on February 13, 1990, because the manner of execution of the search warrant violated the "knock and announce" rule set forth at Pa.R.Crim.P. 2007, 42 Pa.C.S. Hence, all evidence obtained through the search should be suppressed. All other issues raised in defendant's post-trial motions, but not briefed, are deemed waived or abandoned. *Commonwealth v. Gordon,* 364 Pa. Super. 521, 528 A.2d 631 (1987); Lancaster County Rules of Criminal Procedure no. 31D.

When reviewing the denial of a defendant's motion to suppress, the reviewing court must consider

1. Controlled Substance, Drug, Device and Cosmetic Act (V.C.S.A.), Act of April 14, 1972, P.L. 233, no. 64, §1, *as amended;* 35 P.S. 780-113(a)(30), supplement.

2. V.C.S.A., *supra;* 780-113(a)(32), supplement.

only the evidence of the prosecution and so much of the evidence of the defense as, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Whitney,* 511 Pa. 232, 512 A.2d 1152 (1986). During the suppression hearing, the Commonwealth bears the burden of establishing by a preponderance of the evidence that the search or seizure of the evidence satisfies the mandates of Rule 2007 and that the evidence at issue is therefore admissible. *Commonwealth v. Parsons,* 391 Pa. Super. 273, 570 A.2d 1328 (1990). The facts of the particular case determine whether or not the Commonwealth has met this burden. *Commonwealth v. Parsons, supra.*

Pa.R.Crim.P. 2007, *supra,* provides as follows:

"(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

"(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

"(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search."

Absent exigent circumstances, the rule requires that before police may make a forcible entry, they must both announce their authority and purpose, and give the occupants an opportunity to surrender the premises voluntarily. *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982). The purposes of the rule are to prevent violence and

physical injury to both police and occupants, to protect an occupant's privacy expectations against unauthorized entry of persons unknown to him, and to prevent property damage resulting from forced entry. *Commonwealth v. Morgan,* 517 Pa. 93, 534 A.2d 1054 (1987). All requirements such as contained in Rule 2007, however, are tempered by considerations of reasonableness under the circumstances. *Commonwealth v. Stanley, supra.* Exceptions to the rule have developed on the basis of exigent circumstances and the subsequent reasonableness of police conduct in particular cases. These exigent circumstances include situations when the police (1) are virtually certain that the occupants of the premises already know their purpose; (2) have reason to believe that an announcement prior to entry would imperil their safety; or someone else's safety; (3) have reason to believe that evidence is about to be destroyed; and (4) have affirmative indications that the person to be arrested is fleeing. *Commonwealth v. Morgan, supra; Commonwealth v. Davis,* 331 Pa. Super. 285, 480 A.2d 1035 (1984).

With these principles in mind, we shall review the testimony adduced at the suppression hearing to determine whether the execution of the search warrant was reasonable under the circumstances. *Commonwealth v. Stanley, supra.*

Detective Jan Walters of the Lancaster Bureau of Police and the Lancaster County Drug Enforcement Task Force testified that during the period between December 1989 and February 1990, he received information regarding possible narcotics transactions occurring at an apartment occupying the second and third floors above a store at the intersection of Juniata and Rockland Streets in the City of Lancaster. On February 13, 1990, he applied for and received a search warrant to search that location. At

7 p.m. on that same day. Detective Walters and approximately ten other police officers arrived in the vicinity of the apartment to execute the search warrant. The officers parked their vehicles approximately one-half block away from the building containing the apartment. Although Detective Walters remembered the temperature as being average for the middle of February, a sizable number of people were on the streets in the vicinity. One large group was gathered directly across the street from the apartment building.

As the officers exited their vehicles and approached the apartment building, several bystanders, apparently recognizing the policemen as narcotics officers, began shouting "Task Force" in unison. The cry was quickly taken up by other members of the group. In light of similar past occurrences, the officers believed that the shouting was intended as a warning to the occupants of the apartment building. The officers quickly determined that immediate entry into the apartment was necessary, and hurried up a covered outside stairway shouting that they were police officers with a search warrant. Upon reaching the entrance to the apartment at the top of the stairway, the officers immediately utilized a battering ram to break down the locked door, rather than knocking.

Upon entry into the apartment, the police encountered defendant, the only person on the premises, standing in the living room. After ascertaining that defendant did not speak English, Detective Walters attempted to explain in Spanish the purpose of the officers' presence. Defendant indicated that he understood. The police then searched the apartment and discovered a quantity of cocaine, along with various paraphernalia utilized in the sale and deliv-

ery of drugs. Defendant subsequently was placed under arrest.

Trooper Joseph Reed Jr., of the Pennsylvania State Police, corroborated the testimony of Detective Walters. Trooper Reed participated in the execution of the search warrant and he broke down the apartment door with the battering ram. Trooper Reed testified that the crowd shouted both "Task Force" and "police" and that these comments appeared to be directed towards the apartment that was to be searched. Trooper Reed further testified that he believed that the crowd's shouts would be audible to a person inside the apartment building.

In reviewing the knock-and-announce rule set forth at Pa.R.Crim.P.2007, *supra,* it is more appropriately described as the "knock, announce and wait" rule. To reiterate, the rule imposes two basic duties on police before executing a search warrant. *Commonwealth v. Kitchener,* 351 Pa. Super. 613, 617-18, 506 A.2d 941, 943 (1986). First the police absent exigent circumstances requiring immediate forcible entry, must announce their identity and purpose. *Id.;* Pa.R.Crim.P. 2007(a). Second, the police, absent exigent circumstances requiring immediate forcible entry, must wait a reasonable period after such announcement to permit the occupants to peaceably admit them. *Id.;* Pa.R.Crim.P. 2007(b).

As previously stated, such an "exigent circumstance" may take the form of the likelihood that the occupants are disposing of the subject matter of the search warrant. See *Commonwealth v. Norris,* 498 Pa. 308, 313-14, 446 A.2d 246 (1982); *Commonwealth v. Davis, supra.* Instantly, that was the nature of the exigency perceived by the police.

Our research has failed to disclose any cases precisely on point and defendant has cited no controlling authority.

Defendant argues that there is no reason to even believe that he, as an occupant of the building, actually heard the crowd and he specifically denied hearing the shouts. Defendant further asserts that there was still no exigency reasonably perceived by the police because they observed nothing happening inside the residence indicating the destruction of evidence.

Essentially, therefore, defendant contends that the shouting alone cannot give rise to the type of exigency which can forgive compliance with both requirements of the knock-and-announce process. He apparently contends that even if the crowd's shouting accomplished the first duty which the rule imposes on the police, the second duty imposed on the police was violated, i.e., absent exigent circumstances, to wait a reasonable time to permit the occupants to peaceably surrender the premises.

Defendant further asserts, however, that the police could have reasonably perceived an exigency only if they observed suspicious activity happening inside the residence. There was admittedly a lack of any such observations in the testimony provided at the suppression hearing. Therefore, if defendant's previous propositions are valid, the Commonwealth failed to prove the existence of exigent circumstances. See *Commonwealth v. Clemson,* 234 Pa. Super. 191, 193-194 n.1, 338 A.2d 649, 650 n.1 (1975) (to circumvent the ''knock and announce'' process, police must act in reliance on an affirmative, not a presumed, indication that evidence is being destroyed).

Instantly, for the Commonwealth to prevail, an ''affirmative indication'' of exigency must be de-

rived not from observed activity inside the residence, but from the shouting of the crowd outside the building. More appropriately, such an "affirmative indication" must be derived from the shouting of the crowd outside the building and any reasonable inferences based thereon.

Based on these principles and the evidence, we find that it was reasonable for the police to have inferred the crowd's awareness of the police's identity and their purpose, i.e., execution of a search warrant. It was also reasonable for the police to have inferred that the shouting was designed to alert the suspects of the police presence at the earliest possible time to enable the suspects, if possible, to destroy evidence or even escape. Lastly, it was reasonable for the police to have inferred that such a system of "early warning" was pursuant to a conspiracy, however loose or informal, of criminal activity in the area of the search.

The evidence, therefore, discloses that the shouting of the crowd constituted more than a mere announcement of the police presence. It also constituted a threat to the police that the shouting was triggering the destruction of evidence in the residence. It is clearly unreasonable to expect the police to have ignored such threat in slavish devotion to the knock-and-announce process.

Accordingly, we enter the following

## ORDER

And now, May 7, 1991, for the foregoing reasons, the motions in arrest of judgment and for a new trial filed by defendant, Juan Lopez, are dismissed. The Probation Department, Adult Division, is directed to immediately prepare a pre-sentence report on

defendant, after which defendant is directed to appear for sentencing at the call of the district attorney.