## Commonwealth v. Finn

*Mary MacNeil Killinger, assistant district attorney,* for the Commonwealth.

*William T. Cannon,* for defendant.

LAWRENCE, *J.,* January 3, 1994—The Commonwealth appeals this court's order granting the motion in limine of Milton Finn ("defendant") prohibiting the introduction of certain evidence. The background of this motion is gleaned from an in camera conference before the undersigned on November 3, 1993. Defendant is a Pennsylvania State Trooper who was charged in Philadelphia and Montgomery counties with criminal offenses. The subject matter of the charges in both coun-

ties involved a series of events that began on March 8, 1992 when family members of admitted drug dealer Ralph Perez were kidnapped by one John Rohas, allegedly to extort money Perez owed in connection with a prior drug transaction. On the night of the kidnapping and the following day, defendant had contact with Perez through a series of phone calls. Authorities traced these phone calls to a public telephone in Conshohocken. After the last of these calls, a surveillance team composed of state police and other law enforcement agencies followed defendant home, where he was cooperatively taken into custody for investigation. His automobile was impounded and subsequently searched and among the items found in the trunk was 2.6 ounces of cocaine. Defendant was charged with possession of a controlled substance and possession of a controlled substance with intent to deliver in Montgomery County, as he allegedly possessed the controlled substances without any link to his official duties as a state trooper. In Philadelphia, defendant was charged along with Rohas, inter alia, with conspiracy to commit extortion and kidnapping.

Prior to his arrest, on March 9, 1992, defendant contacted his friend, Peter Hamilton, who owned a garage to which defendant had access. Defendant communicated to him that he might be arrested and that money he and his wife kept in a safe might be confiscated as potential evidence. He told Hamilton he had removed the moneys from his house and placed them in Hamilton's garage. He asked Hamilton to remove the cash to a secure place in his garage so that it would be available to him. Hamilton consulted with a relative who was also a state police officer. A search warrant was obtained and approximately $10,500 in various

denominations was confiscated from its location in a washtub in Hamilton's garage.

Defendant went to trial on the extortion and kidnapping charges in Philadelphia in October, 1993. His defense was that he was involved in undercover work. In that trial, the Commonwealth introduced the $10,500 found in the garage and the manner in which it was discovered in an attempt to link it to the kidnapping of one Louis Sanchez. Sanchez testified at the Philadelphia trial that he was an acquaintance of Perez and that he had been kidnapped two weeks prior to the events of March 8, 1992. He testified that his family had had to pay ransom in the approximate amount of $10,000 to secure his release. The Commonwealth's theory in the Philadelphia case was that this was evidence of defendant's participation in the earlier extortion of Sanchez.

Ultimately, the Philadelphia trial ended in a hung jury on the charges.

Defendant then proceeded to trial before a jury on the Montgomery County charges. Prior to trial, the court granted defense motions in limine prohibiting the Commonwealth from referring to the Philadelphia case and from introducing evidence of defendant's attempt to negotiate the delivery of another kilogram of cocaine. The third and final motion, which is the subject of the instant appeal, was a defense request to preclude the Commonwealth from introducing evidence of the $10,500 cash as proof of defendant's status as drug dealer. Defense counsel contended that evidence of the cash could not be introduced in this trial, as there was an insufficient nexus to defendant's status as a drug dealer and especially when there was sworn testimony in a prior case by a Commonwealth witness that the cash was extortion proceeds. Upon consideration of

this motion, the court precluded the introduction of the seizure of $10,500.

A mistrial was declared in this case as well on the basis that the jury was hopelessly deadlocked on the charges. This timely appeal followed.

The Commonwealth contends that our ruling violates *Commonwealth v. Parsons,* 391 Pa. Super. 273, 570 A.2d 1328 (1990), in which the Court stated that as part of the analysis in evaluating intent to deliver a controlled substance, "courts focus upon the quantity of drugs possessed, the presence of drug paraphernalia and the presence of unusually large sums of cash" within a defendant's control. *Id.* at 285, 570 A.2d at 1335. In *Parsons,* the police executed a search warrant at defendant's home and discovered controlled substances and drug paraphernalia in every occupied room of the house including an electronic scale, a box of plastic bags, ziplock bags, a quarter pound of marijuana, other quantities of marijuana in a jar and on a dish, a box containing 7.2 grams of cocaine, packaging materials, and notebooks with tally sheets. Finally, police found approximately $1,500 in cash in defendant's trunk. At trial, expert testimony reflected that these items from the home and car were consistent with the sale and distribution of controlled substance, rather than with the mere possession of controlled substance.

In Parsons and previous cases, (see *e.g. Commonwealth v. Davis,* 331 Pa. Super. 285, 480 A.2d 1035 (1984); *Commonwealth v. Fisher,* 316 Pa. Super. 311, 462 A.2d 1366 (1983); *Commonwealth v. Bundridge,* 303 Pa. Super. 267, 449 A.2d 681 (1982); *Commonwealth v. Smith,* 250 Pa. Super. 460, 378 A.2d 1239 (1977)), the quantum of evidence linking the cash to the drug activity established a strong basis from which the inference could be made that the cash was obtained

as a result of illegal drug trafficking. In each of those cases, as opposed to the instant case, there was no evidence as to any other illegal motive for the presence of the cash other than drug trafficking. Here, there is not the same quantum of evidence tying the cash to defendant's status as a drug dealer and, moreover, the court was aware of defense counsel's representations that there was prior sworn testimony in a related case that the cash was the proceeds of an extortion.

In this court's view, the Commonwealth, by attempting to use the cash as evidence probative of defendant's status as a drug dealer, despite the substantial likelihood that the cash is not drug trafficking proceeds but extortion proceeds, is taking unfair advantage of the type of the evidence (cash) and the fact that it is associated with a variety of offenses and is usually admissible in possession with intent to deliver cases. While we realize there has been no finding on the merits that the cash constitutes extortion proceeds, the Commonwealth's attempt to utilize this evidence for a different and entirely inconsistent purpose in this case, knowing the jury will never hear about the other explanation unrelated to the drug charges (*i.e.,* extortion), is unjustifiable, considering a) the lack of supporting evidence of drug dealing such as paraphernalia, packaging materials, books and records, etc. and b) the knowledge of the Philadelphia County case and the sworn testimony of a Commonwealth witness in that case.

While the Commonwealth urges that defendant could, if he chose, put forth the same explanation for his possession of a large amount of cash as he did in the Philadelphia case,[*] and the undersigned agrees that de-

---

[*] Defendant explained that he had borrowed the money from a friend in California in order to purchase real estate.

fendant could have done so, the court cannot justify admission of evidence of the cash, which would clearly prejudice defendant, knowing that the Commonwealth proffered an entirely different explanation and crime in Philadelphia.

The different courts of common pleas are part of a unified, state judicial system and their power and authority are derived from a single source. *Commonwealth v. Downs,* 334 Pa. Super. 568, 483 A.2d 884 (1984). The undersigned is of the opinion that coordination of the ongoing investigations or at least communication between the two district attorneys' offices would not have been unduly onerous. This is especially true where, as here, the Montgomery and Philadelphia County police and investigators were cooperating with the ongoing investigations. To expect less would lead to the unacceptable conclusion that the goal in this case, in view of the hung jury in Philadelphia, was to convict this defendant no matter how it was accomplished.

Based on the foregoing reasons, we respectfully submit that the order prohibiting the Commonwealth from introducing evidence of the cash was proper and that the Commonwealth's appeal should be dismissed.

(Appealed to the Superior Court November 30, 1993.)