J-A10018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES MICHAEL HERO | : | |
| | : | |
| Appellant | : | No. 2169 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 3, 2022
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0003332-2020

BEFORE:   PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 6, 2023**

Appellant, James Michael Hero, appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas, following his jury trial convictions for possession of a controlled substance, possession of drug paraphernalia, and resisting arrest.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. In September 2020, Sergeant Gregory Huff of the Bethlehem Police Department commenced an investigation into drug activity occurring at 2291 Silver Creek Road in Hellertown.  Subsequent investigation revealed that the property was occupied by Appellant and his co-defendant, Angela Lorah.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), (32) and 18 Pa.C.S.A. § 5104, respectively.

Sergeant Huff was aware that Appellant and Ms. Lorah had a history of arrests for drug offenses. Sergeant Huff also participated in a prior investigation of Appellant, which concluded with Appellant resisting arrest.

During the week of September 21, 2020, Sergeant Huff utilized a confidential informant ("CI") to conduct a controlled purchase of methamphetamine at the property. (*See* Application for Search Warrant, dated 10/3/20, at ¶9). Over a week later, the CI completed a second purchase of methamphetamine from Ms. Lorah at the property. After these transactions, the CI provided Sergeant Huff with additional information about the property. Specifically, the CI indicated that the property was surrounded by "motion-activated surveillance equipment." (*See* N.T. Suppression Hearing, 10/21/21, at 8). The CI also stated that Ms. Lorah kept "a firearm on her hip or in the small of her back," and the CI "was confident that there were other weapons inside of that home." (*Id.* at 7). Further, the CI alerted Sergeant Huff about "two pit bulls in the residence, one of which was described as being aggressive." (*Id.* at 8). Sergeant Huff subsequently conducted surveillance that confirmed the presence of "numerous cameras in numerous locations." (*Id.* at 10).

Based upon the controlled purchases, Sergeant Huff applied for a warrant to search the property. During the predawn hours of October 5, 2020, police executed the warrant. Due to the presence of the security cameras at the property, Sergeant Huff decided to use an emergency response team to

execute the warrant. The team consisted of approximately eighteen members, as well as "additional personnel including uniformed patrol officers and EMS paramedics." (*Id.* at 11-12). Upon arriving at the property, Sergeant Huff "noticed that the first-floor lights were on," which was significant because "that's the area the drugs were stored." (*Id.* at 13). After the officers announced their identity and purpose, Sergeant Huff estimated that the team waited "14, 15 seconds" before using a battering ram to breach the front door. (*Id.* at 14). The officers entered the residence and found Appellant and Ms. Lorah in the living room. The officers arrested Appellant, and the Commonwealth filed a criminal information charging him with various offenses on March 19, 2021.

On June 9, 2021, Appellant filed a suppression motion arguing that the Commonwealth violated the "knock and announce" rule by "violently entering the home after having given [Appellant and Ms. Lorah] no opportunity to comply with the announcement…." (Suppression Motion, filed 6/9/21, at ¶12). On October 21, 2021, the court conducted a suppression hearing. During this hearing, the Commonwealth presented evidence in the form of testimony from Sergeant Huff, video footage of the warrant execution, and photographs of the property. At the conclusion of the hearing, the court made on-the-record findings of fact and conclusions of law, and it denied the

suppression motion.[2]  (**See** N.T. Suppression Hearing at 49-50).

Appellant proceeded to trial, and a jury convicted him of simple possession, possession of drug paraphernalia, and resisting arrest.  On August 3, 2022, the court sentenced Appellant to an aggregate term of eighteen (18) to sixty (60) months' imprisonment.  Appellant did not file post-sentence motions.  Appellant timely filed a notice of appeal on August 18, 2022.  On August 22, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Appellant timely filed his Rule 1925(b) statement on September 7, 2022.

Appellant now raises the following issue for this Court's review:

> Whether the court erred by denying Appellant's pretrial motion to suppress all evidence of drugs [and] paraphernalia as fruit of the poisonous tree?

(Appellant's Brief at 5).

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are

---

[2] The court entered a formal order denying the suppression motion on November 24, 2021.

supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015)).

On appeal, Appellant argues that the police violated the knock and announce rule when executing the search warrant, and "there is no evidence to conclude that the police at time of entry reasonably believed that exigent circumstances would justify" their noncompliance. (Appellant's Brief at 9). Appellant contends that approximately ten seconds elapsed between the officers' announcement and their breach of the front door. Appellant maintains that "police had no reasonable reason to suspect that [Appellant] and [Ms. Lorah] would not allow entrance, as [the police] never gave them a chance to answer the door." (*Id.* at 11). Relying on the Commonwealth's evidence from the suppression hearing, Appellant reiterates that his residence was "approximately 2,900 square feet," and ten seconds was not enough time for the occupants to open the front door. (*Id.*) (citing N.T. Suppression Hearing at 8).

Regarding the existence of exigent circumstances, Appellant asserts

- 5 -

that the Commonwealth did not present evidence of movement inside the residence prior to the breach; thus, there was no reason for the officers to believe that the occupants knew the officers' purpose for being there. Appellant insists that police conducted surveillance of the property before executing the warrant, and the surveillance did not reveal any hazards that would have imperiled officer safety. Finally, Appellant emphasizes that the record is devoid of evidence to justify a belief that the occupants might have been destroying evidence. Under these circumstances, Appellant concludes that the police violated the knock and announce rule, and the court erred in denying his suppression motion. We disagree.

Our rules of criminal procedure govern manner of entry for law enforcement seeking to execute a search warrant:

> **Rule 207. Manner of Entry Into Premises**
>
> (A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.
>
> (B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.
>
> (C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207.

"The purposes of this requirement, known as the 'knock and announce rule,' are to prevent resistance by an occupant protecting his dwelling, to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry, and to prevent property damage resulting from forced entry." *Commonwealth v. Goodis*, 2023 PA Super 136, *5 (filed July 28, 2023). "Although this rule is frequently referred to as 'knock and announce,' the rule actually imposes no specific obligation to knock." *Commonwealth v. Bellamy*, 252 A.3d 656, 664 (Pa.Super. 2021) (quoting *Commonwealth v. Walker*, 874 A.2d 667, 671 (Pa.Super. 2005)). "Nonetheless, the rule requires that police officers announce their identity, purpose and authority and then wait a reasonable amount of time for the occupants to respond prior to entering any private premises." *Id.* (internal footnote omitted).

"When the knock-and-announce rule does apply, it is not easy to determine precisely what officers must do. How many seconds' wait are too few? Our 'reasonable wait time' standard … is necessarily vague." *Hudson v. Michigan*, 547 U.S. 586, 590, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56, ___ (2006).

> In determining whether the police properly complied with the knock and announce rule, a court must consider the amount of time the police wait after knocking and announcing prior to gaining entry, as well as the circumstances observed upon announcement. *See Commonwealth v. Parsons*, 391 Pa.Super. 273, 570 A.2d 1328 (1990) (two announcements of presence coupled with a 45 second wait prior to entry by officers, where sounds of

movement were heard inside residence was sufficient to satisfy the knock and announce rule); *Commonwealth v. Burstin*, 259 Pa.Super. 584, 393 A.2d 979 (1978) (police who waited twenty seconds after knocking and announcing during which time they heard television and telephone conversations prior to gaining entry was reasonable under the knock and announce rule). *Cf. Commonwealth v. Means*, 531 Pa. 504, 614 A.2d 220 (1992) (forcible entry after waiting five to ten seconds after knocking and announcing was unreasonable); *Commonwealth v. Newman*, 429 Pa. 441, 240 A.2d 795 (1968) (forcible entry following twenty seconds of silence after knocking and announcing was unreasonable); *Commonwealth v. Douventzidis*, 451 Pa.Super. 280, 679 A.2d 795 (1996) (knocking only once and waiting only ten to fifteen seconds before entry was unreasonable); *Commonwealth v. Rudisill*, 424 Pa.Super. 313, 622 A.2d 397 (1993) (knocking and waiting fifteen seconds prior to entry was unreasonable).

*Commonwealth v. Dean*, 693 A.2d 1360, 1363 (Pa.Super. 1997), *appeal denied*, 549 Pa. 724, 702 A.2d 1058 (1997).

"The burden is on the Commonwealth to prove that the police fully complied with the knock and announce rule or to prove … exigent circumstances[.]" *Goodis, supra* at \*6.

Our Supreme Court has recognized only four exigent circumstances:

1. the occupants remain silent after repeated knocking and announcing;

2. the police are virtually certain that the occupants of the premises already know their purpose;

3. the police have reason to believe that an announcement prior to entry would imperil their safety; [or]

- 8 -

> 4. the police have reason to believe that evidence is about to be destroyed.

**Bellamy, supra** at 665 (Pa.Super. 2021) (internal citations, emphasis, and footnote omitted).

"These exceptions to the 'knock and announce' rule fulfill the purpose of the rule in that entry is accomplished with a minimum of danger to officers and occupants or damage to the premises." **Commonwealth v. Kane**, 940 A.2d 483, 490 (Pa.Super. 2007), *appeal denied*, 597 Pa. 713, 951 A.2d 1161 (2008) (quoting **Commonwealth v. Morgan**, 517 Pa. 93, 97, 534 A.2d 1054, 1056-57 (1987)). "In order to invoke an exception, police must only possess 'a reasonable suspicion that one of these grounds is present.'" **Id.** at 489 (quoting **Commonwealth v. Sanchez**, 589 Pa. 43, 63, 907 A.2d 477, 489 (2006)). "[T]he [United States Supreme] Court has indicated that '[t]his showing is not high.'" **Sanchez, supra** at 63, 907 A.2d at 489 (quoting **Hudson, supra** at 590, 126 S.Ct. at 2163, 165 L.Ed.2d at ___).

Instantly, the court evaluated the Commonwealth's evidence from the suppression hearing and issued the following findings of fact and conclusions of law:

> On the date in question, the officers had obtained a search warrant to search [Appellant's] residence following two controlled buys of methamphetamine using a [CI]. The [CI] had told the police that one of the residents, Angela Lorah, was seen with a gun in the residence in the small of her back. The police also had evidence from the [CI] that there was an aggressive pit bull on the property, and the officer testified that in the past [Appellant] had been known to cook methamphetamine and, in a prior case, had resisted arrest

- 9 -

upon execution of the search warrant.

On the date in question, the police chose to use the emergency response team, which entailed them driving slowly down a 50-yard driveway … when it was barely light out and there was a surveillance camera noted not only by the [CI] who informed the police about it but was observed during surveillance, and on the date in question when the police went to search the residence the lights were on in the residence where the drug activity was known to have occurred.

Based upon all of this, the officers made a decision—well, they did announce over the loudspeaker that they had a search warrant. There was a relatively small period of time before the door was breached after the knock, but in this case the officers had exigent circumstances, including fear for their safety and also destruction of evidence. So, based upon all of that, there was a reasonable suspicion of the exigent circumstances which allowed for the breach of the residence.

(N.T. Suppression Hearing at 49-50).

Our review of the record confirms the court's findings.[3] Here, the Commonwealth's evidence established that the officers possessed a reasonable suspicion of exigent circumstances. **See Kane, supra**. We

_____

[3] The record on appeal included the flash drive containing the body camera footage from three (3) officers who participated in the execution of the search warrant. This Court reviewed the footage, which confirmed the testimony of Sergeant Huff. Specifically, the footage revealed that police announced their presence and waited thirteen (13) seconds before breaching the front door. (**See** Commonwealth's Exhibit 1-3, Video 1, at 1:56-2:09). Police entered the residence and found that the lights were on in the living room, where both Appellant and Ms. Lorah were present. (**See** Commonwealth's Exhibit 1-3, Video 3, at 2:05-2:11). After the officers entered, one of the dogs immediately ran into the living room. (**Id.** at 2:15). Thereafter, Ms. Lorah offered to assist police with securing the animal. (**See** Commonwealth's Exhibit 1-3, Video 1, at 2:32-2:40).

- 10 -

emphasize that: 1) the presence of security cameras gave the officers a reason to believe that evidence might be destroyed; 2) the CI alerted Sergeant Huff to the presence of weapons on the property, which could have imperiled officer safety; 3) the CI indicated that an aggressive pit bull lived on the property, which created another hazard; and 4) Sergeant Huff knew that Appellant had resisted arrest in the past, further compromising officer safety. *See Bellamy, supra*.  Under these circumstances, the court did not err in denying Appellant's suppression motion.  *See Ford, supra*.  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/06/2023