**COMMONWEALTH OF PENNSYLVANIA,**
Appellee

v.

**James WALKER A/K/A Willie Kendrick, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 3, 2005.

Filed May 6, 2005.

---

Todd E. Henry, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: ORIE MELVIN, McCAFFERY and TAMILIA, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, James Walker a/k/a Willie Kendrick, appeals from the judgment of sentence imposed following his convictions, in a bench trial, of Possession with Intent to Deliver a Controlled Substance 35 P.S. § 780–113(a)(30), Possession of an Instrument Crime, 18 Pa.C.S.A. § 907, and other related charges. He challenges the denial of his motion to suppress and the sufficiency of the evidence to support a finding that he constructively possessed the drugs and guns recovered. We affirm.

¶ 2 The trial court summarized the facts as follows:

On November 19, 1997 at approximately 8:45 p.m., Philadelphia Police Officer Jeffrey Hampton conducted a narcotic[s] surveillance targeting the rear of a property located at 7302 N. 21st Street in Philadelphia. At the location, the officer observed numerous people pull up onto 21st Street in their vehicles, park across the street and walk up the driveway to the rear entrance door on the ground level of the home. The officer observed several people knock on the

basement door, spend a few minutes inside and leave shortly thereafter in their vehicles. At approximately 8:50 p.m. Philadelphia police officers observed two black females approach the property and exit shortly thereafter looking at objects in their hands. Police Officer Pinckney stopped the women a few feet away from the location, and confiscated from them a blue tinted plastic packet which contained a white powder substance. This substance later tested positive for cocaine. A green substance also confiscated tested positive for marijuana.

The next day November 20, 1997 at approximately 1:35 a.m. officers of the Philadelphia police arrived at the house located at 7302 N. 21st street with a search warrant. The officers knocked on the basement door, announced their identity and purpose and heard a male voice respond. After a few seconds with no further response, the officers rammed the basement door. Upon entering the building the officers observed a large room at the basement level. The defendant had dominion and control over the basement area where he kept his clothes and mail addressed to him. He was standing at the top of the stairs when he was arrested. The defendant was in constructive possession of the narcotics in his home.

Inside the basement area, the officers found a camera that monitored the whole walkway, and in the middle of the room was a desk with two piles of a white substance that tested positive for cocaine. The officers recovered a bag underneath the desk with a white powder substance and a camera viewing the driveway area. Also recovered from the basement were scales, 29 packets of co-caine, clear plastic baggies, $10,203.00 in U.S. currency and seven (7) guns in the basement. Two other people lived with the defendant; a sixty (60) year old female and an eighty (80) year old male. These individuals were not arrested.

Trial Court Opinion, filed 3/31/04, at 1–3 (citations to the record omitted). Appellant filed a motion to suppress the physical evidence as the product of a search made in contravention of the "knock and announce" rule embodied in Pa.R.Crim.P. 207 (formerly Rule 2007). The trial court conducted a hearing on June 30, 1998, in which only Officer Marvin Young testified. The trial court found that the officers complied with Rule 207 and denied the motion. Accordingly, a waiver trial followed, and Appellant was convicted of possession with the intent to deliver, firearms violations and related offenses.[1] This appeal follows.

¶ 3 Appellant presents the following questions for our review:

1. The trial court erred in denying Appellant's Motion to Suppress Physical Evidence inasmuch as police officers, in possession of a search warrant, forcibly entered a home without waiting a reasonable period after their announcement, as required by law, and without exigent circumstances to justify the unreasonable manner of their entry, in violation of Appellant's rights under Pa.R.Crim.P. 207, Article 1, § 8 of the Pennsylvania Constitution, and the Fourth Amendment to the Constitution of the United States.

2. The trial court erred in denying Appellant's Motion to Suppress Physical Evidence because the search warrant illegally authorized a nighttime search, as the Affidavit failed to state additional reasonable cause for seeking permission

---

**1.** After trial and before sentencing, Appellant absconded and remained a fugitive until ap-prehended and sentenced in August of 2003.

to search at nighttime as required by Pennsylvania Rules of Criminal Procedure 203(E) and 206(7), and therefore the search was a violation of Article 1, Section 8 of the Pennsylvania Constitution and Pa.R.Crim.P., [Rules] 203(E) and 206(7).

3. The Commonwealth failed to prove beyond a reasonable doubt that Appellant constructively possessed [neither] the drugs nor the weapons recovered where the testimony was simply that Appellant was merely present and arrested on the second floor of a house in which drugs were found, and were being sold from a sealed area in the basement.

Appellant's brief, at 3.

 ¶ 4 Appellant's first two issues concern the trial court's denial of his motion to suppress. Our scope of review of a suppression order is well-settled. Where the Commonwealth prevailed on the issue before the trial court, an appellate court "may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Boczkowski*, 577 Pa. 421, 446, 846 A.2d 75, 89 (2004). Where the record supports the factual findings as determined by the trial court, this Court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* Additionally, we defer to the credibility determinations made by the trial court hearing the suppression evidence so long as its findings are supported by the record. *Commonwealth v. Johonoson*, 844 A.2d 556, 560 (Pa.Super.2004), *appeal denied*, —— Pa. ——, 863 A.2d 1144 (2004).

 ¶ 5 Appellant first argues that the police violated the knock and announce rule during execution of the instant search warrant by failing to wait a reasonable period of time after their announcement of presence and purpose before forcibly entering the premises. This so-called "knock and announce" rule states:

(A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.

(B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa. R.Crim.P., Rule 207, 42 Pa.C.S.A.

Although this rule is frequently referred to as "knock and announce," the rule actually imposes no specific obligation to knock. Rather, the focus of the rule is on the announcement of identity, authority and purpose of the law enforcement officers seeking entry. The purpose of the rule "is to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against the unauthorized entry of unknown persons, and to prevent property damage resulting from forced entry."

*Commonwealth v. Doyen*, 848 A.2d 1007, 1012 (Pa.Super.2004) (quoting *Commonwealth v. Martinelli*, 729 A.2d 628, 630 (Pa.Super.1999)).

¶ 6 Our examination of the record indicates that Officer Young testified on the subject at hand as follows:

BY MS. HILLYER:

Q Can you tell the Court what you did when you approached the house with that search warrant?

A At approximately 1:35 a.m., Your Honor, I went to that location, to the rear of that location, knocked and announced and rang the bell.

Q Officer, what do you mean by, "knocked and announced?"

A Knocked on the door of that location.

Q What did you announce?

A "Police with a search warrant." I heard a voice inside state, "Just a minute."

Q Male voice or female's voice?

A Male's voice. At which time I waited a few seconds, no one came to the door. So, my supervisor directed me to gain entry to the location. Once we gained entry to the location, Officer Simmons, in my presence, arrested this defendant at the top of the stairs from the basement to—which would come into the dining room/kitchen area.

Q How many officers went into the property when you knocked and announced?

A Approximately six, I believe—

Q And how much—

A —went in through the rear.

Q How much time passed between the time the male voice said, "Just a minute," and you went in?

MR. PADOVA: Objection. Answered.

THE COURT: Overruled.

THE WITNESS: Couple seconds.

BY MS. HILLYER:

Q Okay. Did you hear anything else after the male voice?

A No.

Cross–Examination

BY MR. PADOVA:

Q I'm sorry, Officer. How did you enter? How did you enter?

A Forced the door open. I had to pry open the storm door and ram the second door that was there.

Q I'm sorry. And the door that you knocked on was which door?

A The basement—the basement rear door.

Q And the voice that you heard that said, "just a minute"—strike that. When you knocked, did the voice immediately answer you when you first arrived?

A Yes.

Q Okay. In other words, you knocked on the door, yelled, someone said—

A "Who is it?"

Q —"Who is it?" And you said to someone—

A "Police with a search warrant."

Q Okay. Did you yell that to somebody?

A Yes.

Q Did you see who it was you were yelling to?

A No, I couldn't see them.

Q Do you know where the voice came from?

A Looked like it was from the kitchen, because it [sic] was a kitchen light on.

Q So, the voice said, "Just a minute," and that's when you took the door?

A No. He said, "Just a minute," and then I waited, my supervisor said that it seems like no one is coming to the door, so I took the door.

Q Okay. You said a couple seconds you waited?

A Right.

Q Now, you also told the assistant district attorney you didn't hear any movement, correct?

A No, I didn't.

MR. PADOVA: I have nothing further.

THE COURT: Okay. Thank you very much.

N.T. Suppression Hearing and Trial, 6/30/98, at 13–16.

¶ 7 Specifically, Appellant asserts that "[t]wo seconds was hardly enough time to allow the occupants of the house to awake from sleeping at 1:35 a.m., get dressed, and peacefully surrender the home." Appellant's brief, at 11. We find that the testimony offered by Officer Young indicates that more than two seconds elapsed from the time of his announcement of identity, authority, and purpose to the time the basement door was forcibly entered. The Officer testified that he made the announcement, and, after initially receiving an immediate response asking "who is it" and further requesting that they "wait a minute," he consulted his supervisor who then authorized the entry. This sequence of events indicates that from announcement to entry it certainty took longer than two seconds, and, from Appellant's prompt verbal response, it is further indicative of the fact that Appellant was not sleeping as he now contends. In any event, it is conceded that a relatively short interval of time passed between the announcement and the forcible entry. Thus, the critical inquiry remains whether sufficient time elapsed in which the police could form "a reasonable belief that the occupants of the premises did not intend to voluntarily or peaceably surrender the premises." *Commonwealth v. Parsons,* 391 Pa.Super. 273, 570 A.2d 1328, 1332 (1990) (citing *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971)). In reviewing this question of whether the po-

lice waited a reasonable period of time before forcibly entering the premises, we utilize an objective standard as to the reasonable belief of the police. *Id.* Accordingly, in evaluating an officer's compliance with a knock-and-announce rule we look only to the facts and circumstances with which the officers are faced at the time they make their decisions and act on them.

¶ 8 Appellant cites to *Commonwealth v. Means,* 531 Pa. 504, 614 A.2d 220 (1992), in support of his argument that the police failed to wait a reasonable period of time before forcibly entering. In *Means,* police obtained a search warrant to search appellant's home for illegal drugs. Upon arriving, the police "knocked and announced" and waited 5 to 10–seconds before forcibly entering appellant's home. The trial court denied his suppression motion, and after conviction he challenged this ruling to this Court. We affirmed and held that a 5 to 10–second delay after the police "knock and announce" was reasonable before forcibly entering under Rule 207. Our Supreme Court granted *allocatur* to consider the issue of whether a five to ten-second delay after the police knock and announce their presence and purpose was reasonable under Rule 207 where the police have stipulated that no exigent circumstances existed. The Supreme Court reversed, vacated the trial court's judgment of sentence, and granted appellant a new trial. The Supreme Court specifically noted that the Commonwealth had not alleged any exception to the "knock and announce" rule. Thus, in the absence of exigent circumstances, a 5 to 10–second delay was not a reasonable time for an occupant to respond to the police officers.

¶ 9 In the instant case, unlike *Means,* the Commonwealth asserted an exigency, which the trial court accepted. Specifically, the Commonwealth argued, in conjunction with Appellant's objection to the

nighttime search, that under the totality of the circumstances the police had a legitimate concern that the evidence would be moved or destroyed since during their earlier surveillance they had arrested two buyers who could have subsequently alerted Appellant upon their release from custody. N.T. Suppression, 6/30/98, at 19–21. Therefore, when executing the search warrant the Commonwealth argues that given their knowledge that Appellant was operating a large scale drug operation from the basement "the police were reasonable in recognizing the possibility that [Appellant] was stalling when he asked them to wait 'just a minute' and that he could be quickly destroying contraband." Commonwealth's Brief, at 9. We agree with the trial court's conclusion that under these circumstances the police were not "obligated to wait a minute." N.T. Suppression, 6/30/98, at 24.

¶ 10 We find the remaining cases cited by Appellant are also distinguishable from the facts of this case. In *Commonwealth v. DeMichel, supra,* the Supreme Court held that a five to fifteen second delay, standing alone, cannot constitute support for a belief that evidence was being destroyed. In *Commonwealth v. Douventzidis,* 451 Pa.Super. 280, 679 A.2d 795 (1996), this Court, in reversing the judgment of sentence, noted that the police failed to state their purpose prior to entering the dwelling ten to fifteen seconds after announcing their presence and that there were no exigent circumstances that would have excused the police from announcing their purpose. Similarly, in *Commonwealth v. Carlton,* 549 Pa. 174, 701 A.2d 143 (1997), the police announced their presence but again did not announce their purpose and forced the door after twenty to thirty seconds. The Supreme Court noted that the police failed to state their purpose prior to entering the dwelling and that there were no exigent circumstances that would have excused the police from announcing their purpose. The Supreme Court further noted:

> If police had identified themselves and stated their authority and purpose, the absence of a response within a reasonable time would have justified a forced entry. In the absence of a statement of authority and purpose, however, it was reasonable and within their constitutional rights that the occupants did not respond.

*Id.* at 184–185, 701 A.2d at 148.

¶ 11 Here, the police clearly identified themselves and stated their authority and purpose. We further find they waited a reasonable period of time under the totality of the circumstances, which were even more compelling than those present in *Carlton* where the Supreme Court indicated that forced entry would have been justified if the police had stated their authority and purpose prior to the forcible entry. Furthermore, the case *sub judice* is analogous to both *Commonwealth v. Burstin,* 259 Pa.Super. 584, 393 A.2d 979 (1978) and *Parsons, supra.* In *Burstin,* this Court addressed whether the police's knocking and announcing their identity, authority and purpose and waiting twenty seconds during which time they heard a television and telephone conversations, before forcibly entering an apartment constituted a reasonable time as required by Rule 207. We concluded that because the police heard voices within close proximity to the door where they had knocked, this provided the occupants with enough time to have answered the door during the twenty seconds which had elapsed. *Id.* at 981. Similarly, we find the scenario proffered by Officer Young in the instant case occasioned a comparable period of delay before entering that was "reasonably long enough" to provide the Appellant with an opportunity to surrender the premises voluntarily. *Id.* The police had first-hand

concrete knowledge that someone was inside the residence and was awake. With such information it was not unreasonable for the officers to conclude that a failure to respond to their knocking and announcement of purpose was a refusal of permission to enter.

¶ 12 In *Parsons*, we concluded that the two announcements of identity, authority and purpose, coupled with the sounds of a person moving about which were heard emanating from the premises and the more than forty-five seconds which elapsed from the police's first knock on the door until the police forcibly entered the home, furnished the police with reasonable grounds to conclude that the occupants did not intend to permit entry voluntarily. Likewise in *Commonwealth v. Dial*, 445 Pa. 251, 254–255, 285 A.2d 125 (1971), our Supreme Court upheld the validity of the execution of a search warrant where the police testified that they announced their presence, announced that they had a warrant and requested that someone "please, open-up" the door.

¶ 13 Furthermore, the Commonwealth cites to *U.S. v. Banks*, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003), in support of its position. We find the analysis provided in *Banks* concerning exigency and the totality of the circumstances persuasive. The United States Supreme Court in *Banks*, held that police officers' delay of 15 to 20 seconds after announcing their presence by knocking on an apartment door and calling out "police search warrant" was sufficient to satisfy the reasonableness requirement of the Fourth Amendment and justify their forced entry to execute a warrant to search for drugs under the totality of circumstances. In so holding, the United States Supreme Court reversed a divided panel of the Ninth Circuit, which found that the entry had no exigent circumstances, making forced entry by destruction of the apartment door permissible under the Ninth Circuit's four-part "vetting scheme"[2] only if there was an explicit refusal to admittance.

¶ 14 Writing for a unanimous Court, Justice Souter emphasized, with respect to the Fourth Amendment, the importance of a totality of the circumstances analysis in determining reasonableness of the length of time police must wait after knocking and announcing their intent to execute a search warrant in a felony case. Justice Souter opined:

> although the notion of reasonable execution must be fleshed out, we have done that case by case.... We have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances. It is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.

*Id.* at 35–36, 124 S.Ct. 521. Justice Souter went on to specifically disapprove of the Ninth Circuit's four-part "vetting scheme," noting that the demand for enhanced evidence of exigency to knock down a door

**2.** The Court of Appeals divided such entries into (a) ones in which exigent circumstances existed and non-forcible entry was possible, permitting entry to be made simultaneously with or shortly after announcement; (b) entries in which exigent circumstances existed and forced entry by destruction of property was required, necessitating more specific inferences of exigency; (c) entries in which no exigent circumstances existed and non-forcible entry was possible, requiring an explicit refusal of admittance or a lapse of a significant amount of time; and (d) entries in which no exigent circumstances existed and forced entry by destruction of property was required, mandating an explicit refusal of admittance or a lapse of an even more substantial amount of time.

had already been rejected by the time the Ninth Circuit decided the case. Justice Souter further opined that the "Court of Appeal's overlay of a categorical scheme on the general reasonableness analysis threatens to distort the 'totality of the circumstances' principle, by replacing a stress on revealing facts with a resort to pigeonholes." *Id.* at 42, 124 S.Ct. 521. Justice Souter said that the standards governing an entry after a knock are the same as those for requiring or dispensing with a knock and announce. The obligation to make their presence known gives way when police officers have reasonable grounds to expect futility or to suspect an exigency, such as drug destruction, will occur immediately upon knocking. Because most people keep their doors locked, a no-knock entry will normally do some damage, "a circumstance too common" to require a heightened justification to destroy a door by forced entry when a reasonable suspicion of an exigency already exists. *Id.* at 37, 124 S.Ct. 521.

¶ 15 In *Banks,* like the instant case, the exigency involved the risk of losing the evidence sought by the warrant to destruction that became apparent after the officers loudly knocked and announced their presence and received no response from inside the small apartment. The Court concluded that the officers could fairly suspect that the defendant would attempt to flush his drugs away. The defendant's counterarguments, that he did not hear the officers because he was in the shower and that 20 seconds was not enough time to reach the front door, were rejected because they rested on a mistake about the relevant inquiry. The facts known to the police are what determine the reasonableness of the waiting time, not a defendant's possible unawareness of their presence and purpose. Also, the Court held that the crucial time is not how long it would have taken the defendant to reach his front door, but how long it would have taken him to destroy the drugs. Accordingly, when the exigency became apparent, the officers were not bound to wait any longer before making forced entry even though their entry required that the door be damaged.

■ ¶ 16 Ordinarily, refusal of admittance is not directly articulated but by implication. There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case. No case in this Commonwealth interpreting this rule has ever required officers to wait until the occupants destroy the evidence or flee and thus render a search unavailing and an arrest impossible. We find that the instant circumstances were such as would convince a reasonable police officer that permission to enter had been refused. Here, on the same evening approximately 4½ hours prior to execution of the search warrant, the police had observed what appeared to be a large scale drug operation being operated out of the basement of this house. The police witnessed a constant parade of people walk up to the back of the house, trigger a motion-sensitive light to illuminate the area, and knock on the basement door. Someone inside would promptly answer the door and the parties would converse briefly and leave moments later. Later, upon execution of the warrant Appellant again promptly responded to the police's announcement of identity and purpose but delayed in coming to the door thereafter. Armed with their prior knowledge of the arrests resulting from the police surveillance, it became apparent that Appellant may be stalling in order to flee or destroy evidence. As in *Carlton* and *Banks, supra,* we do not believe the officers were bound to wait any longer before making forced entry. Therefore, we hold that the

trial court did not err in refusing to suppress evidence obtained from the search of Appellant's residence.

¶ 17 Next, Appellant challenges the propriety of the authorization of a warrant for a nighttime search. He asserts that the affidavit did not make a sufficient showing of reasonable cause for a nighttime search.

¶ 18 Pennsylvania Rule of Criminal Procedure 203(C) (formerly Rule 2003(C)) provides, "No search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search." The trial court found, based on the argument articulated above, that the police had a reasonable fear that delay until morning following the earlier arrests would result in movement or destruction of the evidence sought by the warrant. We note that the certified record on appeal fails to include the warrant and affidavit of which Appellant now complains. "It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Everett Cash Mutual Insurance Company v. T.H.E. Insurance Company*, 804 A.2d 31, 34 (Pa.Super.2002) (quoting *Hrinkevich v. Hrinkevich*, 450 Pa.Super. 405, 676 A.2d 237, 240 (1996)); *see Roth Cash Register Co., Inc. v. Micro Sys., Inc.*, 2005 PA Super 54, 868 A.2d 1222, *P2 (filed February 10, 2005) (stating, "this Court will only consider documents which are part of the certified record"). Without these documents, we are in no position to review the conclusion reached by the trial court. Accordingly, we find this claim is waived.

¶ 19 Appellant's remaining claim concerns the sufficiency of the evidence. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Nahavandian*, 849 A.2d 1221, 1229–30 (Pa.Super.2004) (citations omitted). "It is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Flamer*, 848 A.2d 951, 953 (Pa.Super.2004) (citation omitted), *appeal denied*, 580 Pa. 711, 862 A.2d 1253 (2004). Additionally, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super.2003), *appeal denied*, 575 Pa. 691, 835 A.2d 709 (2003).

¶ 20 Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession. *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super.2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004).

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference

arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super.2004) (citations omitted). We have held that circumstantial evidence is reviewed by the same standard as direct evidence—that is that a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa.Super.2003) (citations omitted).

¶ 21 With regard to the possession convictions, Appellant contends the Commonwealth failed to prove constructive possession because he was merely present and not tied to the basement where the drugs and guns were found. He argues by way of analogy and cites to constructive possession cases involving passengers in vehicles. Given the fact that we are here dealing with a residence these cases are clearly inapposite. In the case *sub judice*, Appellant was present in the house when the police arrived and searched the premises. During the search, the police discovered that the basement contained three rooms: a bedroom with a closet containing men's clothes, a bathroom, and an office filled with large amounts of cocaine, marijuana, drug paraphernalia and loaded guns. In the office, police also found mail addressed to Appellant. Furthermore, after being placed under arrest, Appellant requested to go down to the basement bedroom to retrieve a shirt and shoes and

admitted that he resided at the residence with his stepfather. N.T. Trial, 6/30/98, at 62–63. We conclude that viewing the evidence, and the inferences drawn from that evidence in the light most favorable to the Commonwealth, and based upon the totality of the circumstances, there was sufficient evidence to establish that Appellant exercised conscious dominion and control over the contraband found in the basement. *See Commonwealth v. Miley*, 314 Pa.Super. 88, 460 A.2d 778, 784 (1983) (finding intent to exercise control over controlled substance may be established by knowledge of its presence); *see also Commonwealth v. Nelson*, 399 Pa.Super. 618, 582 A.2d 1115, 1119 (1990) (holding constructive possession may be found where no individual factor establishes possession but the totality of circumstances infer such); *Commonwealth v. Santiesteban*, 381 Pa.Super. 18, 552 A.2d 1072, 1074–75 (1988) (finding trier of fact could infer constructive possession where the defendant lived in house, had access and control of floor where the contraband was recovered, and large amount of cash was found in his bedroom); *Commonwealth v. Keefer*, 338 Pa.Super. 184, 487 A.2d 915, 918 (1985) (finding evidence sufficient to support inference that defendant maintained control over bedroom where drugs were seized and, thus, over the drugs, where men's clothing and receipts, one with the property's address listed as defendant's, were found in bedroom).

¶ 22 Judgment of sentence affirmed.