J-S56009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LUIS VEGA-DIAZ | |
| Appellant | No. 2075 MDA 2013 |

Appeal from the Judgment of Sentence November 8, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000281-2012

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 07, 2014**

Appellant, Luis Vega-Diaz, appeals from the judgment of sentence entered November 8, 2013, by the Honorable Thomas G. Parisi, Court of Common Pleas of Berks County.  Vega-Diaz argues that the trial court erred when it denied his pre-trial motion to suppress evidence.  We disagree and affirm.

The trial court summarized the facts adduced at the pre-trial suppression hearing as follows.

> On January 2, 2012, Criminal Investigator John Lackner of the [City of Reading Police Department,] Vice Division[,] prepared a search warrant for 1020 Weiser Street in the City of Reading, Berks County, as well as a Ford Focus HWF-2813, and the body of Appellant, Luis Vega-Diaz.  The warrant was signed by Magisterial District Judge Kim Bagenstose and executed by

_____

[*] Retired Senior Judge assigned to the Superior Court.

Officer Lackner and other members of the Reading Police Vice Division on January 3, 2012.

At approximately 9:30 a.m. on January 3, 2012, officers observed Appellant exit 1020 Weiser Street and leave the area in the Ford Focus that was also subject of the search warrant. After Appellant's departure, Officer Keven Jaser and John Carrasquillo stopped Appellant in the Focus and placed him into custody subject to the warrant. Officer Lackner testified that once the officers assigned to the entry were notified that the vehicle was stopped and the Appellant was in custody, the officers approached 1020 Weiser Street to make entry.

After repeated knocks and an announcement, approximately one minute had passed. At this point, Officer Lackner requested that Detective Matt Niebel break the door down with a battering ram. Detective Niebel then announced "police" and proceeded to break down the door. Once the door was opened, Officer Lackner announced, "police, search warrant" and entered through the front door. Ms. Tonya Rice was found on the second floor in the area of the bedroom in the hallway as the officers searched the residence for people in order to secure the residence and execute the search warrant. Ms. Rice was then handcuffed. Meanwhile, Appellant and the Ford Focus were brought back to Weiser Street at Officer Lackner's direction. Officer Lackner testified that, as Appellant did not speak English, Officer Carrasquillo assisted with translating Officer Lackner's explanation of the search warrant and *Miranda* rights to the Appellant from English to Spanish. Officer Lackner explained to Appellant that there was a search warrant for his house at 1020 Weiser, the two vehicles and his person. Appellant than agreed to speak to Officer Lackner without an attorney. Appellant, through Officer Carrasquillo, told Officer Lackner that he had some heroin packets on his person and that additional heroin was located in the residence. Appellant took Officer Lackner through the house and showed him where the heroin could be located. Appellant indicated to Officer Lackner that he was a drug user. Appellant told Officer Lackner that there was an additional quantity of heroin in the basement, which was in a black trunk. Officer Lackner then asked Appellant if he had a key to the lock. Appellant said that the key to the trunk was on the key ring that he had on his person.

A large quantity of heroin was found inside the locked trunk once opened. There were also keys found on Appellant's

key ring that opened the front door of 1020 Weiser Street.  Upon further search of the residence, a firearm was seized from the second floor front bedroom where it was found standing upright behind the bedroom door.  Empty unused packaging material was also found inside the residence.  Additionally, 50 packets of heroin that were bundled in packages were found on the Appellant's person in his underwear.

Trial Court Opinion, 2/10/14 at 3-4.

Vega-Diaz chose to proceed *pro se*, with the assistance of a translator, during pre-trial hearings and at trial. The Berks County Public Defender's Office acted as standby counsel. Vega-Diaz filed a pre-trial motion to suppress evidence, which the trial court denied by order dated on April 30, 2013, following several hearings on the matter.  A jury ultimately convicted Vega-Diaz was convicted of Possession with Intent to Deliver a Controlled Substance,[1] Persons Not to Possess Firearms,[2] and Possession of Drug Paraphernalia.[3]  On November 8, 2013, the trial court sentenced Vega-Diaz to an aggregate term of 7 to 20 years' imprisonment, followed by ten years' probation.  This timely appeal followed.[4]

On appeal, Vega-Diaz raises the following issue for our review.

Whether the trial court erred in denying Appellant's pre-trial motions, where police officers executed a search warrant of Appellant's home, without complying with a proper "knock and announce", absent exigent circumstances, in violation of Appellant's rights under the Fourth and Fourteenth Amendments

---

[1] 35 P.S. § 780-113(a)(30).
[2] 18 Pa.C.S.A. § 6105(a)(1).
[3] 35 P.S. § 780-113(a)(32).
[4] On April 17, 2014, Counsel was appointed to represent Vega-Diaz on appeal.

of the Constitution of the United States, and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania?

Appellant's Brief at 4.

Our standard when reviewing a trial court's denial of a motion to suppress evidence is well-settled.

> [W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole.

*Commonwealth v. McAliley*, 919 A.2d 272, 275-276 (Pa. Super. 2007) (citation omitted).  Our scope of review in suppression matters is limited to the evidentiary record presented at the pre-trial suppression hearing, and does not include evidence elicited at trial.  *See In re L.J.*, 79 A.3d 1073, 1084-1085 (Pa. 2013).  "Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings." *Commonwealth v. Powell*, 994 A.2d 1096, 1101 (Pa. Super. 2010).

Pennsylvania Rule of Criminal Procedure 207 codifies the "knock and announce" rule as follows:

> (A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.

> (B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose,

unless exigent circumstances require the officer's immediate forcible entry.

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207.

"The rule is designed to promote peaceable entry by affording fair warning, and to safeguard legitimate privacy expectations to the degree possible." **Commonwealth v. Kane**, 940 A.2d 483, 489 (Pa. Super. 2007) (citation omitted). "Although this rule is frequently referred to as 'knock and announce,' the rule actually imposes no specific obligation to knock." **Commonwealth v. Walker**, 874 A.2d 667, 671 (Pa. Super. 2005) (citation omitted). "Rather, the focus of the rule is on the announcement of identity, authority and purpose of the law enforcement officers seeking entry." **Id**. (citation omitted).

Vega-Diaz argues that the police never announced before knocking down the door and entering the residence. The suppression court rejected this argument and determined that, based on the evidence presented at the suppression hearing, police reasonably complied with the knock and announce rule. We agree.

At the suppression hearing, Officer Lackner testified that he knocked several times, announced "police," and did not receive a response. N.T., Suppression Hearing, 8/16/12 at 27. After waiting approximately one minute, he requested Officer Niebel to force the door open. **Id**. at 28.

Officer Lackner testified that after he knocked a final time, Officer Neibel announced "police, search warrant" and forced the door open. *Id*. at 30. Officer Niebel confirmed that he announced "police, search warrant" prior to forcing the door to the residence open, and again after opening the door and prior to entering. N.T., Suppression Hearing, 9/9/12 at 10. Officer Niebel additionally testified that the police officers continued to announce their presence and purpose as they entered and cleared the house. *See id*.

Based on the foregoing testimony, we find that the police substantially complied with the knock and announce rule. By announcing their presence prior to, during, and after entering the residence at 1020 Weiser Street, anyone located in the residence would have been fully aware of police presence and purpose and would have had ample opportunity to peacefully surrender. We agree with the suppression court that the police acted reasonably and that their conduct did not offend constitutional mandates.[5] Accordingly, suppression was not warranted.

Judgment of sentence affirmed. Jurisdiction relinquished.

_____

[5] The United States Supreme Court has held that the exclusionary rule is inapplicable to Fourth Amendment knock and announce violations. *See Hudson v. Michigan*, 547 U.S. 586, 594-595 (2006).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2014