**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHIREE LEVERNE GRAY, | |
| Appellant | No. 785 MDA 2017 |

Appeal from the Judgment of Sentence April 12, 2017
in the Court of Common Pleas of Lancaster County
Criminal Division at Nos.: CP-36-CR-0000126-2016
CP-36-CR-0002393-2016

BEFORE: PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 24, 2018**

Appellant, Shiree Leverne Gray, appeals from the judgment of sentence entered on April 12, 2017, following her non-jury conviction of possession with intent to deliver (PWID)[1] and related offenses. On appeal, Appellant challenges the trial court's denial of her motion to suppress. For the reasons discussed below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

We take the underlying facts and procedural history in this matter from the trial court's June 30, 2017 opinion and our independent review of the certified record.

On October 19, 2015, at approximately 11:45 a.m., after an exchange of text messages, [Appellant] delivered approximately [twenty-eight] grams of bulk heroin to a confidential informant working under the direction and control of the Lancaster County Drug Task Force, for the sum of $500.00. This drug transaction took place at [Appellant]'s residence at 515 Beaver Street in the City of Lancaster.

After the confidential buy on the morning of October 19, 2015, the Drug Task Force obtained a search warrant for [Appellant]'s residence at 515 Beaver Street. During the search of the residence, [d]etectives located approximately [ninety-eight] grams of heroin and [approximately three hundred forty-five] grams of marijuana, three digital gram scales, numerous white glassine bags, a clear plastic container of rice, a sifter, a measuring spoon, and $1,843.00 U.S. currency. The Drug Task Force members also performed a consent search of an automobile being driven by [Appellant]. Detectives located [approximately two hundred thirteen] grams of marijuana and $801.00 U.S. currency in the vehicle, and $495.00 U.S. currency on [Appellant].

Consequently, on October 19, 2015, [Appellant] was arrested and charged by members of the Drug Task Force with having committed the offenses of possession with intent to deliver heroin, possession with intent to deliver marijuana (two counts), and possession of drug paraphernalia. These charged offenses were docketed at Information No. 0126 of 2016. [Appellant] was also charged at Information No. 2393 of 2016 with the offenses of possession with intent to deliver heroin and criminal use of a communication facility, related to the confidential buy on the morning of October 19, 2015.

On May 25, 2016, [Appellant] filed an omnibus pretrial motion seeking to suppress the items seized pursuant to the search warrant executed at her home and pursuant to the consensual search of her vehicle. [Appellant] also challenged her statements to the police following her arrest, which she claimed were not the product of a free, intelligent, knowing, voluntary,

informed or affirmative waiver of her privilege against self-incrimination. A suppression hearing was held on September 22, 2016. . . .

(Trial Court Opinion, 6/30/17, at 1-3) (record citations and footnotes omitted).

[At the suppression hearing, Detective Ryan Kelly of the Lancaster County Drug Task Force testified. He stated that o]n October 19, 2015, at approximately 3:45 p.m., [he], together with five members of the Drug Task Force, executed a search warrant at 515 Beaver Street in the City of Lancaster. [Prior to execution of the search warrant, the residence had been under surveillance and the task force members knew that Appellant was away, but were unaware if other individuals were in the residence]. As Detective Kelly approached the residence, he encountered a young black female sitting on the stairs of the front porch beside a baby carriage. Detective Kelly asked the woman, later identified as Appellant's daughter, Erica Marshall, to step off the porch, which she did without hesitation. Detective Kelly could see through the closed glass storm door that the front door was "wide open."

Detective Kelly knocked on the outer door and shouted, "police with a search warrant." Immediately after announcing his presence, Detective Kelly opened the storm door and entered the residence without waiting for a response. Detective Kelly and the five Task Force members entered the building in a "stacked" formation, and as each entered the residence he or she announced, "police with a search warrant." Once inside, the officers split up and continued announcing, "police with a search warrant," as they secured the residence. Detective Kelly, and each member of the team, was wearing a Drug Task Force raid vest with the words "Police" on the front and back.

Once the house was cleared, Ms. Marshall was brought into the residence and Detective Kelly read the service portion of the search warrant to her, as well as the *Miranda*[2] warnings. A subsequent search of the residence revealed controlled substances in the basement area.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 3 -

(*Id.* at 7-8) (record citations omitted). Following the hearing, the trial court

denied the motion to suppress.

On December 12, 2016, [Appellant] entered a straight guilty plea in each of the above-captioned dockets. At that time, sentencing was delayed to allow for a pre-sentence investigation report. However, the very same day, [Appellant] withdrew her plea, waived her right to a jury trial, and commenced a bench trial before the [trial court].

At the conclusion of the stipulated bench trial, [Appellant] was found guilty of all charges at Docket No. 2393-2016, and guilty of the following three charges at No. 0126-2016: possession with intent to deliver heroin [ ], possession with intent to deliver marijuana [ ]; and possession of drug paraphernalia. A pre-sentence investigation report was ordered.

On April 12, 2017, [Appellant] was sentenced to an aggregate term of [not less than six nor more than fifteen] years' incarceration. . . . With respect to each count in each information, the counts were run concurrently. The sentences imposed at the two [i]nformations were also concurrent. However, the aggregate sentence of [not less than six nor more than fifteen] years' incarceration imposed at Nos. 0126-2016 and 2393-2016 [was] consecutive to the sentence of [not less than three nor more than twenty-three] months' incarceration imposed on January 30, 2017, by the Honorable Thomas C. Branca in the Court of Common Pleas of Montgomery County at No. CP-46-CR-0002974-2016. . . .

A timely notice of appeal to [this] Court from the judgment of sentence was filed on May 11, 2017. . . . Pursuant to [the trial c]ourt's directive, [Appellant] furnished a concise statement of [errors] complained of on appeal. . . . An amended statement of errors was filed on June 22, 2017 . . . . [On June 30, 2017, the trial court filed an opinion. *See* Pa.R.A.P. 1925].

(*Id.* at 3-4) (record citations and footnote omitted).

On appeal, Appellant raises the following issue for our review:

I.     Did the trial court err in denying [Appellant's] [m]otion to [s]uppress, where police violated the knock and announce rule, as

- 4 -

set forth in Pennsylvania Rule of Criminal Procedure 207, by failing to await a response for any period of time after announcing their identity, authority and purpose?

(Appellant's Brief, at 6).

On appeal, Appellant challenges the denial of her motion to suppress, for which our standard of review is well-settled. (*See id.* at 15-27). When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." ***Commonwealth v. Holton***, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by Appellant. ***See id.*** If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the suppression court. ***See id.***

The "knock and announce" rule is codified at Pennsylvania Rule of Criminal Procedure 207, which provides as follows:

> A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.
>
> (B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.

- 5 -

(C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207. This Court has stated, "[t]he rule is designed to promote peaceable entry by affording fair warning, and to safeguard legitimate privacy expectations to the degree possible." *Commonwealth v. Kane*, 940 A.2d 483, 489 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1161 (Pa. 2008) (citation omitted). "Although this rule is frequently referred to as 'knock and announce,' the rule actually imposes no specific obligation to knock." *Commonwealth v. Walker*, 874 A.2d 667, 671 (Pa. Super. 2005) (citation omitted). "Rather, the focus of the rule is on the announcement of identity, authority and purpose of the law enforcement officers seeking entry." *Id.* (citation omitted). Further, "[c]ase law thus establishes that where the purpose of the rule has not been offended and where police conduct is reasonable, suppression will not be granted based upon an overly-technical approach to the knock and announce rule." *Kane*, *supra* at 492.

> [T]he rule requires that police officers announce their identity, purpose and authority and then wait a reasonable amount of time for the occupants to respond prior to entering any private premises. This requirement, however, will be relaxed only in the presence of exigent circumstances. Our Supreme Court has recognized only four exigent circumstances:
>
> 1. the occupants remain silent after repeated knocking and announcing;
>
> 2. the police are virtually certain that the occupants of the premises already know their purpose;

- 6 -

3. the police have reason to believe that an announcement prior to entry would imperil their safety; [or]

4. the police have reason to believe that evidence is about to be destroyed.

*Commonwealth v. Frederick*, 124 A.3d 748, 754-55 (Pa. Super. 2015), *appeal denied*, 138 A.3d 2 (Pa. 2016) (citations and footnotes omitted). In order to invoke an exception, police must only possess "a reasonable suspicion that one of these grounds is present[.]" *Commonwealth v. Sanchez*, 907 A.2d 477, 489 (Pa. 2006), *cert. denied*, 551 U.S. 1106 (2007) (citation omitted). Reasonableness is decided on a case-by-case basis. *See Walker*, *supra* at 673.

Here, Appellant does not dispute that the police knocked and announced themselves, but argues that they lacked reasonable suspicion of exigent circumstances necessary to enter the residence without waiting. (*See* Appellant's Brief, at 18-27). We disagree.

In the instant matter, the officers had a reasonable suspicion that the drug evidence would be destroyed if they delayed entry after knocking and announcing themselves. The facts and circumstances available to the officers at the time of executing the search warrant, based upon prior surveillance and first hand perceptions of the undercover drug transactions, led the officers to believe there was heroin in the property. (*See* N.T. Suppression Hearing, 9/22/16, at 8-13). Detective Kelly deliberately waited until after Appellant had left the residence to conduct the search because of his concern that she

would destroy the heroin.  (**See id.** at 14-15).  While the detective knew that Appellant was not in the residence, he was uncertain if anyone else was present.  (**See id.** at 40).  Because the front door was open, with only a glass storm door closed, and the police were in full uniform, they were easily visible to anyone in the residence, who would have had the opportunity to destroy the heroin.  (**See id.** at 20).  Therefore, since the police officers had reasonable suspicion to believe that evidence would be destroyed they properly invoked an exception to the knock and announce rule.  **See Sanchez**, **supra** at 489; **Kane**, **supra** at 492.  Thus, the trial court did not err in denying Appellant's motion.

For the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>04/24/18</u>