J-S77003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONNIE SMITH | : | |
| | : | |
| Appellant | : | No. 3386 EDA 2017 |

Appeal from the Judgment of Sentence September 14, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-000103-2016

BEFORE:  OTT, J., DUBOW, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 07, 2019**

Ronnie Smith appeals from the judgment of sentence imposed September 14, 2017, in the Philadelphia County Court of Common Pleas.  The trial court sentenced Smith to an aggregate term of six to 12 years' imprisonment, and two years' consecutive probation, following her non-jury conviction of, *inter alia*, possession with intent to deliver controlled substances ["PWID"] and criminal use of a communication facility.[1]  On appeal, Smith challenges the sufficiency of the evidence supporting those two convictions. For the reasons below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 35 P.S. § 780-113(a)(30), and 18 Pa.C.S. § 7512, respectively.

The facts underlying Smith's arrest and conviction were aptly summarized by the trial court as follows:

On October 1, 2015, the Philadelphia police received information including a phone number [that] led them [to the] 1500 block of Woodstock Street. On that date, Officer Jason Yerges dialed the phone number and listened on speakerphone to a conversation between a confidential informant (C.I.) and the recipient of the call. Yerges testified that he heard what appeared to be a female voice speaking on the receiving end of the call. Yerges then gave the C.I. $40 of buy money and directed him to conduct a transaction with the recipient of the phone call at 1551 South Woodstock Street. He observed the C.I. enter the house and exit approximately 5 minutes later. The C.I. returned to Yerges's patrol car and handed to him one blue pill stamped with "A 215." A seizure analysis indicated that the pill tested positively for oxycodone.

On October 7, 2015 at approximately 7:00 p.m., Officer Yerges employed the same C.I. to replicate the previous transaction. Yerges testified that he redialed the same phone number, and the C.I. arranged a drug buy with the recipient of the phone call, Yerges then gave the C.I. $40 in buy money and directed him to go to the 1500 block of South Woodstock Street. Yerges testified that he witnessed [Smith] exchange items with the C.I. at the front door of 1551 South Woodstock Street. The C.I. then returned to Yerges and gave him two green pills stamped "A 214" immediately after the transaction. A seizure analysis indicated that these pills tested positively for oxycodone.

On October 15, 2015, Officer Yerges and other officers returned to the same location with a search warrant for 1551 South Woodstock Street at approximately 2:00 pm. Yerges set up surveillance from his patrol car at the corner of Tasker Street and Woodstock Street (approximately 100 feet from the target location). Yerges testified that the front door to the house was open and he observed [Smith] seated on a chair a few feet within the entrance. Approximately fifteen minutes later, he observed a female walk down the 1500 block at South Woodstock Street with money in her hand and approach the doorway. [Smith] came to the doorway (in sight of Yerges) and exchanged items for money.[16]

_____

[16] The unidentified female wore a red coat and blue jeans. Officer Yerges observed the female exchange money for items from [Smith] and then saw the female put her palm to her mouth before walking away. He indicated that it was not a swallowing motion.

_____

On October 16, 2015 at approximately 12:30 p.m., Officer Yerges and other agents set up surveillance at the same location. Yerges testified that he observed a heavyset black male (Leonard Ware) knock on the door to 1551 South Woodstock Street several times unanswered. He then observed Ware looking up and down the street and answering a couple phone calls. Approximately 15 minutes later, he observed [Smith] and two male passengers arrive in a SUV. [Smith] was carrying a brown handbag when she exited the vehicle. [Smith], Ware, and the unidentified men then entered the house.

Shortly thereafter, the police and other agents knocked and announced their presence before using force to enter the house. [Smith] was secured in the hallway on the second floor as was a brown handbag in close proximity to her. Police recovered from the brown handbag 6 pill bottles containing various scheduled drugs, a small clear glass jar containing purple liquid, a utility bill for 1551 South Woodstock Street in [Smith's] name, a white cell phone, and cash.[24] Yerges dialed the same number he had used during his investigation with the C.I., and the white cell phone alerted and displayed his phone number. Police also recovered a firearm and other drug paraphernalia from the house, though none of these items were ultimately attributed to [Smith].

_____

[24] Seizure analysis of the scheduled drugs in the pill bottles tested positively for oxycodone, Alprazolam, codeine and acetaminophen, Dizepam, and a non-controlled prescription item.

Trial Court Opinion, 7/10/2018, at 2-4 (most footnotes and all record citations and emphasis omitted).

Smith was arrested and charged with PWID, possession of controlled substances, possession of drug paraphernalia, conspiracy, criminal use of a

communication facility, possession of a firearm prohibited, and possessing an instrument of crime.[2]  The case proceeded to a non-jury trial.  On December 16, 2016, the trial court found Smith guilty of PWID, conspiracy, criminal use of a communication facility, possession of controlled substances and possession of drug paraphernalia.  The court found her not guilty of the remaining crimes concerning the firearm.  On September 14, 2017, the trial court sentenced Smith to a term of six to 12 years' imprisonment for PWID, and a consecutive term of two years' probation for criminal use of a communication facility.  No further penalty was imposed on the remaining offenses.  Smith filed a timely notice of appeal, *pro se*, on October 10, 2017.  New counsel was appointed, and, on February 12, 2018, complied with the trial court's directive to file a concise statement of matters complained of on appeal.

Smith raises two issues on appeal, both challenging the sufficiency of the evidence supporting her convictions.  Our standard of review is well-established:

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." However, the Commonwealth need not establish guilt to a

---

[2] **See** 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), and 18 Pa.C.S. §§ 903, 7512(a), 6105(a)(1), and 907(a), respectively.

mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Commonwealth v. Smith***, 146 A.3d 257, 261–262 (Pa. Super. 2016) (internal citations omitted).

Smith first argues the evidence was insufficient to support her conviction of PWID. "In order to convict an accused of PWID under 35 P.S. § 780–113(a)(30), the Commonwealth must prove that [s]he 'both possessed the controlled substance and had an intent to deliver that substance.'" ***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011) (quotation omitted), *aff'd by evenly divided court*, 106 A.3d 705 (Pa. 2014).

When controlled substances are not found on the defendant's person, the Commonwealth must prove constructive possession of the drugs. ***See Commonwealth v. Walker***, 874 A.2d 667, 677 (Pa. Super. 2005). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Smith***, ***supra***, 146 A.3d at 263 (quotation omitted). It has been defined as "conscious dominion," that is "the power to control the contraband and the intent to exercise that control," and it "may be established by the totality of the circumstances." ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (quotation omitted), *appeal denied*, 78 A.3d 1090 (Pa. 2013). Moreover, it is possible for two or more people to have joint constructive possession of the same

contraband.  ***Commonwealth v. Kinnard***, 95 A.3d 279, 292 (Pa. Super. 2014).

Similarly, the fact finder should consider all the facts and circumstances surrounding the defendant's possession of contraband to determine if she possessed it with the intent to deliver.  ***See Commonwealth v. Lee***, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 894 (Pa. 2009).  Relevant factors include:  "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash[.]"  ***Koch***, ***supra***, 39 A.3d at 1001.

In the present case, Smith insists she was merely present in the home, with five other people, when the police executed the search warrant.  ***See*** Smith's Brief at 15.  As for the pill bottles recovered from the brown purse, Smith emphasizes that three of the bottles bore her name, one bore the name of her son, and the other bottles "likely belonged to any of the other five people in the home" as the bag was "equally accessible" to them.  ***Id.*** at 14, 15.  Absent a narcotics expert, she contends the Commonwealth failed to establish she possessed the drugs with the intent to deliver.  ***See id.*** at 16. With regard to the cell phone, which had been used to coordinate the prior controlled buys, Smith notes the Commonwealth did not establish who owned the phone, and the "female voice" heard during the controlled buy could have been any of the three other women present during the execution of the warrant.  ***Id.*** at 15.

The trial court concluded the Commonwealth proved, beyond a reasonable doubt, that Smith possessed the pills with the intent to deliver them. *See* Trial Court Opinion, 7/10/2018, at 6-7. We agree.

First, the court noted the police recovered six pill bottles from the purse she had been seen carrying into the residence. *See id.* at 6. While several of the bottles had labels with both her and her son's name, two of the bottles contained a label that had been scratched off. Inside those bottles were controlled substances, for which Smith did not have a prescription. *See id.* at 6. Second, the court noted the Commonwealth used a confidential informant ("CI") to purchase oxycodone from the residence on two separate occasions. The first time, on October 1, 2015, the officer heard a female voice on the call the CI placed to the supplier. *See id.* at 7.[3] During the second controlled buy, conducted less than a week later, the officer observed Smith meet the CI at the door, and exchange items for money. *See id.* Accordingly, the trial court found the evidence was sufficient to convict Smith of PWID.

Our review of the record reveals ample support for the trial court's findings. The fact that other persons were present in the residence at the time of the search is irrelevant. Officer Yerges identified a female voice on the phone during the first controlled buy, and saw Smith, herself, exchange items for money during the second controlled buy. *See* N.T., 12/9/2016, at

---

[3] The court also stated that Officer Yerges saw Smith answer the door during the October 1, 2015, controlled buy. However, that statement is not supported by the record. *See* N.T., 12/9/2016, at 23-25.

23, 32. He also witnessed Smith conduct another probable drug transaction the day before the search. *See id.* at 40. Two of the pill bottles were recovered from a brown purse that he had seen Smith carrying shortly before the search. *See id.* at 28-29, 45-46. There were also items with her name in the purse, as well as the cell phone with the number used to set up the controlled buys. *See id.* at 55, 59-60. Under the totality of the circumstances, we agree with the trial court's determination that the evidence was more than sufficient to support Smith's conviction of PWID.

Next, Smith argues the evidence was insufficient to sustain her conviction of criminal use of a communication facility. Section 7512 of the Crimes Code provides, in pertinent part, "[a] person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony[.]" 18 Pa.C.S. § 7512(a).

Here, Smith insists "the only evidence" of this offense was the CI's drug-related conversation with a "female voice." Smith's Brief at 16. She emphasizes the Commonwealth presented no evidence "as to whom the phone is registered," and that, it was "equally accessible by any of the other five people in the home." *Id.* at 16-17.

The trial court addressed this claim as follows:

Officer Jason Yerges received a phone number and other information on October 1, 2015 that led him to the 1500 block of Woodstock Street. Yerges dialed the phone number and listened on the speakerphone to a conversation between the C.I. and the recipient of the call. Yerges heard what appeared to be a female's

- 8 -

voice on the receiving end of the call. Yerges then gave the C.I. $40 of buy money and directed him[ or her] to conduct a transaction with the recipient of the phone call at 1551 South Woodstock Street. [H]e observed the C.I. enter the house and exit approximately 5 minutes later. The C.I. subsequently returned to Yerges and handed to him one blue pill stamped "A 215." The seizure analysis reflected that the pill tested positively for oxycodone.

On October 7, 2015, Yerges used the same C.I. to make a second drug purchase. Yerges redialed the same phone number and had the C.I. arrange a drug buy with the person who answered the call. Yerges also gave the C.I. $40 in buy money. Yerges next witnessed [Smith] exchange items with the C.I. at the front door of 1551 South Woodstock Street. The C.I. immediately gave Yerges two green pills stamped "A 214" after the transaction. The seizure analysis reflected that the pills tested positively for oxycodone.

On October 16, 2015, police executed a search warrant at 1551 South Woodstock Street. However, approximately 15 minutes before the warrant was executed, Yerges observed [Smith] and 2 other men arrive at the location in a vehicle. Yerges observed [Smith] exit the vehicle with a brown handbag before all of the passengers entered the house. The police then executed the warrant, arrested [Smith], and recovered the same brown handbag on the second floor in close proximity to [her]. When police searched the brown handbag, they recovered 6 pill bottles containing various scheduled drugs, a clear bottle containing a purple liquid, a utility bill for 1551 South Woodstock Street in [Smith's] name, and a white cell phone. Yerges dialed the same number that he had used with the C.I. during his investigation, and the white cell phone began ringing in his presence.

Given the evidence, the Commonwealth established beyond a reasonable doubt that [Smith] knowingly and intentionally used the white cell phone to communicate with the C.I. before the October 1, 2015 and October 7, 2015 transactions. Furthermore, [Smith] knowingly facilitated the illegal drug transactions with the C.I. [Her] culpability is further evidenced by the blue and green pills the C.I. returned to Yerges on each date after interacting with [Smith].

Trial Court Opinion, 7/10/2018, at 8-10 (footnotes, record citations and emphasis omitted).

We find no basis to disagree. The circumstantial evidence clearly supports Smith's conviction of violating Section 7512 of Title 18. The CI used the same phone number to contact his or her supplier before each controlled buy. During the first transaction, the officer heard a female voice on the other end. During the second transaction, the officer witnessed Smith answer the door, and exchange items for money. When a cell phone was recovered from Smith's purse during the search, the officer called the number supplied by the CI. Immediately, the newly discovered cell phone rang and displayed the officer's number. Under these circumstances, we agree the evidence was sufficient to support Smith's conviction of criminal use of a communication facility.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/19

- 10 -