J. S03004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
        v.    :
    :
KEVIN DOUGLAS BROWN,    :    No. 527 EDA 2015
    :
        Appellant    :

Appeal from the Judgment of Sentence, February 6, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009758-2013

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MARCH 03, 2016**

Kevin Douglas Brown appeals from the judgment of sentence of February 6, 2015.  We affirm.

The trial court convicted appellant of possession of a controlled substance with intent to deliver, criminal conspiracy, and a violation of the Uniform Firearms Act[1] on July 23, 2014.  On February 6, 2015, the trial court sentenced appellant to an aggregate term of five to ten years' imprisonment.  Appellant filed post-sentence motions, which the trial court denied on February 18, 2015.  This timely appeal followed.

Appellant raises the following issues for our review:

> 1.    Was the evidence insufficient as a matter of law such that no reasonable factfinder could

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903(c) and 6105(a)(1), respectively.

have found Mr. Brown guilty of Possession with Intent to Deliver beyond a reasonable doubt where there was no evidence of record that Kevin Brown was involved in any narcotics transaction nor were any narcotics recovered from him[?]

2. Was the evidence insufficient as a matter of law such that no reasonable factfinder could have found Mr. Brown guilty of Possession of a Firearm beyond a reasonable doubt when the only evidence presented on the record was that Kevin Brown went into a room of a house where a firearm was ultimately recovered[?]

3. Was the verdict of guilty against the weight of the evidence because there was uncontradicted testimony from defense witness Dawn Stinger that Kevin Brown did not live in the front room of the residence where the firearm and drug paraphernalia were found[?]

Appellant's brief at 9.

Having determined, after careful review, that the Honorable Daniel J. Anders, in his Rule 1925(a) opinion of June 17, 2015, ably and comprehensively disposes of appellant's issues on appeal, with appropriate reference to the record and without legal error, we will affirm on the basis of that opinion.

Judgment of sentence affirmed.

J. S03004/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CRIMINAL

COMMONWEALTH OF PENNSYLVANIA          :          CP-51-CR-0009758-2013

VS.                                                              :          527 EDA 2015

KEVIN BROWN                                          :

**FILED**

JUN 1 7 2015

Criminal Appeals Unit
First Judicial District of PA

OPINION

Following a waiver trial, Defendant Kevin Brown was convicted of possession of a controlled substance with the intent to deliver ("PWID"), criminal conspiracy, and one violation of the Uniform Firearms Act. The trial court imposed a guideline sentence of 5 to 10 years of incarceration for the convictions. On appeal, Defendant argues that: (1) the evidence was insufficient to support the convictions; and (2) the verdict was against the weight of the evidence. For the reasons stated below, the Superior Court should affirm the judgment of sentence.

FACTUAL BACKGROUND

On July 9, 2013, Philadelphia Police Officer Ronald McCutcheon conducted a drug surveillance of 1457 West Chew Street in Philadelphia. Officer McCutcheon gave a confidential informant ("CI") $20 in pre-recorded buy money and instructed the CI to attempt to make a narcotics purchase from a house located at 1457 West Chew Street. Officer McCutcheon observed the CI knock on the door, engage in a brief conversation with an unidentified person, enter the property and then exit the property two minutes later. The CI returned to Officer McCutcheon and provided him with two clear Ziploc packets containing crack cocaine. N.T. 07/11/2014 at 9-10.

On July 10, 2013, Officer McCutcheon gave the CI $20 in pre-recorded buy money and instructed the CI to attempt to make a narcotics purchase from the same house. Officer McCutcheon observed the CI knock on the front door, engage in a brief conversation with a

black female, enter the property and then exit the property two minutes later. The CI returned to Officer McCutcheon and provided him with two orange-tinted Ziploc packets containing crack cocaine. *Id.* at 11-12.

On July 12, 2013, Officer McCutcheon gave the CI $20 in pre-recorded buy money and instructed the CI to attempt to make a narcotics purchase from the same house. Officer McCutcheon observed the CI engage in a brief conversation with a black male later identified as Charles Graves, who was sitting on the front steps of the house. The CI gave Graves the $20 in pre-recorded buy money. Graves entered the property and then exited the property two minutes later. Graves provided the CI with small objects in a hand-to-hand transaction. The CI returned to Officer McCutcheon and provided him with one purple-tinted Ziploc packet containing crack cocaine. *Id.* at 14-17.

Approximately ten to fifteen minutes later, Officer McCutcheon executed a search warrant that they had obtained earlier in the day based upon the July 9th and July 10th narcotics transactions. Upon entering the house, officers stopped Charles Graves in the kitchen and arrested him. Two or three females were on the first floor, but were not arrested. *Id.* at 13, 20-21.

Officer Weaver participated in the execution of the search warrant of 1457 Chew Avenue. She was the first police officer to go to the second floor. When she arrived on the second floor, she observed Defendant coming out of a bathroom either wearing a towel or completely naked. Defendant asked Officer Weaver if he could get dressed, to which she said he could. Defendant then walked into the front bedroom. Officer Weaver followed him into the front bedroom and allowed him to get dressed. Defendant dressed himself with clothes from the front bedroom. Officer Weaver did not take or bring Defendant to the front bedroom; rather, she followed him into the bedroom that he chose to enter. *Id.* at 32-33, 37-40, 46.

Police recovered $1,587 from this front bedroom, including the $20 in pre-recorded buy money that was used by the CI less than 15 minutes earlier to purchase narcotics. The $1,587 was in the following denominations: one $50 bill, twelve $20 bills, fourteen $10 bills, 14 $5 bills and 947 $1 bills. Police also recovered the following items from the front bedroom where Defendant was arrested: two bags containing new and used narcotics packaging, a digital scale, a letter addressed to Defendant, and a .25 caliber Titan semiautomatic firearm loaded with two live rounds. The letter was recovered from on top of the dresser; the packaging, scale, and firearm were recovered from inside a closet located in the bedroom; and the firearm was recovered from inside a shoebox that was one of several shoeboxes stacked in the closet. The front bedroom contained men's clothing and toiletries; there was no female clothing in the bedroom. N.T. 07/11/2014 at 24-27, 40-44, 48; N.T. 07/18/2014 at 6-7.

After he was arrested, Defendant told police officers that he resided at 1457 Chew Avenue. Defendant was never observed engaging in any narcotics transactions on July 9, 2013, July 10, 2013, or July 12, 2013. N.T. 07/11/2014 at 28-29, 35.

Defense counsel presented the testimony of Dawn Stinger, who testified that Defendant had just returned from work and was taking a shower upstairs when police executed the search warrant. According to Stinger, Graves used the front bedroom and Defendant used the rear bedroom. *Id.* at 59-60.

The trial court chose to credit the testimony of Police Officer Weaver based upon her demeanor and manner of testifying. N.T. 07/23/2014 at 3. The trial court did not automatically credit her testimony based upon her status as a police officer, but chose to credit her testimony in light of the totality of circumstances. *See Commonwealth v. Harrison*, 323 A.2d 72 (Pa. Super. Ct. 1974) (holding that to presume that any police officer called by the Commonwealth is truthful constitutes "such a display of partiality as to constitute basic and fundamental error").

-3-

DISCUSSION

## 1. There Is Sufficient Evidence To Support The Convictions

Defendant asserts that the evidence was insufficient to support the PWID and VUFA convictions. Appellate courts review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Bradley*, 69 A.3d 253, 255 (Pa. Super. Ct. 2013). The appellate court must evaluate the entire record and consider all evidence actually received. *Id*. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Id*. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id*.

### a. There Is Sufficient Evidence To Support The PWID Conviction

To support Defendant's PWID conviction, the Commonwealth must have proved beyond a reasonable doubt that: (1) Defendant possessed a controlled substance; and (2) he possessed it with the intent to deliver. *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. Ct. 2005). Possession with intent to deliver can be inferred from the quantity of the drugs possessed, the manner in which they are individually packaged, the behavior of the defendant, and other circumstances, such as a lack of drug user paraphernalia and the reputation of the area for narcotic sales activity. *In the Interest of Evans*, 717 A.2d 542, 546 (Pa. Super. Ct. 1998); *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1239 (Pa. 2007).

Here, there is sufficient evidence to establish beyond a reasonable doubt that Defendant *possessed the narcotics*. Where, as here, the defendant is not found with contraband on his person, the Commonwealth must show that he had constructive possession of the seized items,

-4-

which has been defined as the "ability and intent to exercise control over the substance." *Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa. Super. Ct. 2008). Constructive possession is defined as "conscious dominion;" which itself is defined as, the power to control the contraband and the intent to exercise that control. *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). Constructive possession may be established by the totality of the circumstances. *Id.* An inference of constructive possession arises from a set of facts that Defendant's possession was more likely than not. *Commonwealth v. Macolino*, 318 A.2d 132, 134 (Pa. 1983). "Individually, the circumstances may not be decisive; but in combination, they may justify an inference that the accused had both the power to control and the intent to exercise that control. . . ." *Commonwealth v. DeCampli*, 364 A.2d 454, 456 (Pa. Super. Ct. 1976). A defendant's movement and behavior observed by police, in addition to the fact that contraband was found within the area of defendant's immediate control, establishes constructive possession. *Commonwealth v. Stembridge*, 579 A.2d 901, 903 (Pa. Super. Ct. 1990); *Commonwealth v. Ortega*, 539 A.2d 849, 851 (Pa. Super. Ct. 1988).

Here, there is sufficient evidence to prove beyond a reasonable doubt that Defendant constructively possessed the cocaine. The trial court credited the testimony of Officer Weaver that the cocaine was discovered in the front bedroom where Defendant brought the officers and where Defendant changed into his clothing. Defendant was the only occupant of the room at the time of the search, and Defendant admitted that he lived in the house. The room was a private bedroom and was not a common area. The letter recovered from the same room addressed to Defendant, along with the male clothing, male toiletries, and absence of female clothing, led the fact-finder to believe beyond a reasonable doubt that this was Defendant's room. Further, the trial court discredited Stinger's testimony about which room belonged to Defendant because her statements were inconsistent with the weight of the other evidence produced at trial. *See*

-5-

*Commonwealth v. Walker*, 874 A.2d 667, 678 (Pa. Super. Ct. 2005) (finding that a defendant constructively possessed drugs and guns found in basement of residence where: (1) the basement contained three rooms: a bedroom with a closet, a bathroom, and an office filled with drugs and guns; (2) the bedroom closet contained men's clothing; (3) mail addressed to the defendant was found in the office; (4) after being arrested defendant requested to retrieve his shirt and his shoes from the bedroom; and (5) defendant admitted that he resided at residence).

Here, there is sufficient evidence to prove beyond a reasonable doubt that Defendant possessed the cocaine, and that he possessed it with the intent to deliver based on: (1) the large amount of money—$1,587 in cash, including the pre-recorded buy money recovered from the front bedroom; (2) the denominations of the recovered money: one $50 bill, twelve $20 bills, fourteen $10 bills, 14 $5 bills, and 947 $1 bills; (3) that Defendant voluntarily and freely led police into the front bedroom where the money, the gun, and the scale were found; (4) the scale recovered along with the new and used packaging; (5) the buy money from that same day was recovered in Defendant's room; (6) Defendant told the officers that he resided at the house, and (7) the letter addressed to Defendant recovered from on top of the dresser. Expert testimony about the denominations of the recovered money was unnecessary in this case because the fact-finder could use common sense to determine whether the substantial amount cash recovered was circumstantial evidence of Defendant's intent to deliver. *See Commonwealth v. Baker*, 72 A.3d 652 (Pa. Super. Ct. 2013) (concluding that expert testimony was unnecessary because of the other evidence in the case, including baggies, over $2,300 in cash recovered with the drugs, and pre-recorded buy money).

Based on the foregoing, there was sufficient evidence at trial to support the PWID conviction.

b.    There Is Sufficient Evidence To Support The VUFA Conviction

Defendant asserts that the evidence was insufficient to support the VUFA conviction under 18 Pa.C.S. § 6105. To sustain a conviction under Section 6105, there must be sufficient evidence to prove beyond a reasonable doubt that Defendant possessed a firearm and that he was convicted of an enumerated offense that prohibited him from possessing, using, controlling, or transferring a firearm. Section 6105 defines "firearm" as any weapon that is "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105; *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. Ct. 2009).

Here, because Defendant did not *physically* possess the firearm, the Commonwealth must have proven beyond a reasonable doubt that Defendant *constructively* possessed the firearm. For the same reasons discussed *supra* at 4-6, there is sufficient evidence to prove beyond a reasonable doubt that Defendant constructively possessed the firearm. *See Walker*, 874 A.2d at 678.

Based on the foregoing, it was reasonable for the trial court to conclude that Defendant constructively possessed the firearm, *i.e.*, he had the power and intent to exercise control over it. Also, Defendant stipulated that he was prohibited from possessing a firearm under Section 6105 and that the firearm was operable. N.T. 07/11/2014 at 52-53. Viewing this evidence in a light most favorable to the Commonwealth, there is sufficient direct and circumstantial evidence to support the VUFA conviction.

2. The Verdict Was Not Against The Weight Of The Evidence

Defendant asserts that the verdict was against the weight of the evidence as to the PWID conviction. When evaluating the weight of the evidence, the standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus [the Superior Court] may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003).

In light of the overwhelming evidence as summarized above, the verdict is not contrary to the evidence and does not shock one's sense of justice.

CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

BY THE COURT:

_____
DANIEL J. ANDERS, JUDGE
Dated: June 17, 2015

-8-